WEBSTER, Judge.
The City of Panama City (the City) appeals a final judgment entered in favor of T & A Utilities Contractors (Contractors) in a breach of contract action brought by Contractors. The City raises two issues: (1) whether the trial court committed reversible error when it granted Contractors’ motion for a directed verdict on the issue of liability, made at the close of the evidence; and (2) whether the trial court committed reversible error when it denied the City’s motion in limine to exclude the testimony of Contractors’ expert witness on damages, and when it denied the City’s motion for a directed verdict on the issue of damages. Contractors has taken a cross appeal in which it asserts that the trial court committed reversible error when it permitted a witness to offer his opinion, over objection, .regarding the reasonable cost to complete the work called for by the contract. Because we conclude that the trial court committed reversible error when it granted Contractors’ motion for a directed verdict on the issue of liability, we reverse.
The City and Contractors entered into a contract pursuant to which Contractors agreed to install new water mains in a specified part of the City, in return for the payment of $420,338.00. Shortly after the contract had been executed and Contractors had begun work on the project, a dispute arose regarding whether pipe being used met contract specifications. The City’s Director of Engineering Services demanded that Contractors provide “documentation from the manufacturer” that the pipe met contract specifications. When Contractors failed to produce what the City’s Director of Engineering Services and Manager considered satisfactory proof that the pipe being used met contract specifications within what they felt to be a reasonable time, the City’s Manager wrote Contractors a letter, in which he said, “The City has decided to terminate the contract due to the contractor’s failure to provide sufficient evidence of material suitability and disregard for the authority of the owner and the engineer.”
Approximately three weeks after the City’s Manager had sent the letter to Contractors, during a regular meeting of the City Commission, the Manager explained to the Commission what had happened and requested the Commission to award a contract to the company which had made the lowest bid for completion of the water main project. The Mayor asked the City Attorney whether “he had any problems with the cancellation of the contract and the procedure.” When the City Attorney responded that he did not, the City Commission voted unanimously to award the contract for completion of the project to the low bidder.
Contractors subsequently commenced this action. Its second amended complaint (the complaint) alleges that the contract had been entered into, and that the City had breached the contract (without explicitly identifying the nature of the alleged breach). However, the complaint also alleges that the City, relying on certain provisions of the contract, had terminated the contract; and that Contractors had “completely performed its work under the contract documents in a good workmanlike manner, furnishing all labor, materials and equipment in total compliance with contract documents.” Therefore, the only reasonable interpretation of the allegations made is that the City’s purported termination had been unjustified and, accordingly, was actually a breach.
The City filed an answer denying that it had breached the contract, and asserting as an affirmative defense that “[t]he contract with [Contractors] was terminated as a result of [Contractors’] failure to proceed ac *746 cording to the terms of the contract and specifications." Contractors then filed a reply, denying the affirmative defense. The case proceeded to trial on the issues thus framed.
As the foregoing discussion demonstrates, the issues framed by the pleadings were whether the City was justified in terminating the contract because Contractors had failed to comply with the terms of the contract; or whether Contractors had complied with the terms of the contract, so that the City’s purported termination actually constituted a breach. However, at the close of its case, Contractors moved for a directed verdict on the issue of liability on the grounds that, as a matter of law, the City’s Manager lacked the authority to terminate the contract; and that, as a matter of law, the City Commission had not ratified the purported termination of the contract by the Manager. Although such an issue had not been raised in the pleadings, the motion was effective in shifting the focus of the trial to that issue, and away from whether the City had been justified in terminating the contract. In reserving ruling on the motion, the trial court said:
I am not inclined to grant the directed verdict on liability at the close of the Plaintiffs [sic ] case because the Defendant has not had a chance to present evidence to respond or show justification for their [sic] actions. Right now the Plaintiff has just presented evidence^] and I am not sure if there’s any additional evidence the Defense can present on the issue of ratification. And if there is no other evidence to be presented on the issue of ratification[,] I agree with the Plaintiff’s argument that the City Manager did not have the authority to send the letter of January 5th to the Plaintiff terminating the contract without either prior approval from the City as the owner or some action of ratifying the City Commissioners [sic] authority to terminate the contract, so I will reserve ruling on the issue until close [of] the Defendant’s case and allow the Plaintiff to move for a directed verdict at that time based upon whatever evidence, any additional evidence to be presented by the Defendant in its case in chief.
At the close of all the evidence, Contractors renewed its motion for a directed verdict on the issue of liability. The City responded that, assuming that the Manager lacked the authority actually to terminate the contract without the approval of the City Commission, it was clear that, by accepting the Manager’s recommendation to award a contract to complete the project which had been the subject of the contract with Contractors, the City Commission had intended to ratify the Manager's decision to terminate the contract with Contractors. Despite the City’s argument, the trial court granted Contractors’ motion for a directed verdict on the issue of liability, saying:
The owner, the City, chose to terminate the contract, but ... the City did it through the City Manager[,] and the City Manager did it without any authority of the board and there’s nothing in the code that gives the City Manager the authority to, on its [sic ] own, terminate ... contracts_ [T]he City Manager powers under the code do not include the power to cancel contracts.... He did it on his own under the belief that he’s acting as an agent of the owner, the City. He had no power to do that under the City code. So, the question really is, did the City, the owner, really terminate the contract and, and properly.... [0]n that issue[,] they’re entitled to a directed verdict.... [T]he City did not ratify the actions of the City Manager ... in ... the same way[ ] that- it was required to form the contract.... [H]ere there’s no proof that the City Manager had the authority to sign the letter terminating the contract[] [a]nd[,] therefore, cancel the contract automatically^] and there’s no proof that the City ratified his conduct by resolution or act in a formal process_
It appears that, in reaching its decision, the trial court was persuaded that Ramsey v. City of Kissimmee, 139 Fla. 107, 190 So. 474 (1939), was controlling and required the result reached. In Ramsey, the plaintiff sued to recover for certain engineering services allegedly performed pursuant to a *747 contract with the City. The City’s charter required that contracts such as that sued upon be made by the City Commission, and that the Commission’s action " 'be expressed by ordinance or resolution.’ ” 139 Fla. at 111, 190 So. at 476. Although the proposed contract was read at a regular meeting of the Commission, and one of the Commissioners told the Mayor to sign the contract (which he did), no motion was made nor resolution nor ordinance adopted approving the contract. Subsequently, the City made a payment pursuant to the contract. The supreme court held that, because the Commission had not approved the contract in the manner required by the City’s charter, the contract had never come into existence. Moreover, it held, further, that the City’s part payment pursuant to the contract’s terms was not legally sufficient to bind the City based upon the doctrine of ratification because the contract could only be ratified by action which would have been sufficient to adopt it in the first instance (i.e., by resolution or ordinance). The rationale for the court’s decision was stated as follows: “Persons contracting with a municipality must, at their peril, inquire into the power of the municipality, and of its officers, to make the contract contemplated.” 139 Fla. at 113, 190 So. at 477.
We find the trial court’s reliance upon Ramsey to be misplaced. Ramsey establishes a rule for cases where an attempt is being made to hold a municipality to the terms of a contract, for the benefit of the other party to the contract. We have found no decision which extends Ramsey to the type of situation presented by this case, where the municipality seeks to terminate a contract because of an alleged breach by the other party. It seems clear to us that the policy justification underlying the Ramsey decision is that taxpayers should not be held accountable on a contract unless the contract has been entered into according to the strict letter of the law. Otherwise, corrupt (or merely inept) public officials could subject the public to untold financial liability. However, such a concern is not present in a case such as the present one, where the municipality wishes to terminate a contract, previously entered into according to law, because its officials have concluded that the contract has been breached by the other party. Moreover, we believe that it would be an odd rule of law, indeed, which provided that, even though the other party to a contract with a municipality had breached the contract, because the municipality had failed to comply with technical formalities when it terminated the contract on account of the breach, it would be liable to the other party for breach of contract, rather than vice versa.
Assuming, without deciding, that the City’s Manager lacked actual authority to terminate the contract, we conclude that the City clearly ratified the Manager’s act. We reach this conclusion because of the action taken by the City Commission when, approximately three weeks after the Manager had sent the termination letter, it voted to award a contract to complete the project after the Manager had explained that Contractors had been terminated. That such was the intent of the Commission is the only conclusion consistent with reason and common sense. Based upon this conclusion, we hold that the trial court committed reversible error when it granted Contractors’ motion for a directed verdict.
We reverse the final judgment in favor of Contractors, and remand for a new trial on the issues framed by the pleadings— whether the City was justified in terminating the contract because Contractors had failed to comply with the terms of the contract; or whether Contractors had complied with the terms of the contract, so that the City’s purported termination actually constituted a breach. We find no error in the remaining issue raised by the City, or in the issue raised by Contractors on its cross appeal.
REVERSED and REMANDED, with directions.
SMITH and ALLEN, JJ„ concur.