No. 112,869

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF TOPEKA, KANSAS,
*Plaintiff-Appellee*,

and

JAYHAWK RACING PROPERTIES, LLC,
*Intervenor-Appellee*,

v.

CHRISTOPHER IMMING,
*Defendant-Appellant*.

SYLLABUS BY THE COURT

1.

Ratification is a principal's affirmance of an agent's prior act, thereby giving the act the same legal effect it would have if the act had been performed by an agent acting with authority.

2.

A principal who receives notice of an unauthorized act of an agent must promptly repudiate the agent's action or it is presumed that the principal has ratified the act.

3.

In dealing with cities, there must be some affirmative act to ratify or some action taken by the governing body that is consistent with ratification in order to ratify some unauthorized act of an agent of the city.

1

4.

The four-part test to determine if an ordinance is legislative or administrative as directed in *McAlister v. City of Fairway*, 289 Kan. 391, 212 P.3d 184 (2009), is applied.

5.

Ordinances subject to referendum or election under another statute cannot be the subject of an initiative and referendum petition.

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed March 11, 2015. Affirmed.

*Robert E. Duncan, II*, of Topeka, for defendant-appellant.

*Catherine P. Logan* and *Mark A. Samsel*, of Lathrop & Gage LLP, of Overland Park, for plaintiff-appellee City of Topeka.

*Kevin M. Fowler*, *John C. Frieden*, and *Eric I. Unrein*, of Frieden, Unrein & Forbes, LLP, of Topeka, for intervenor-appellee Jayhawk Racing Properties, LLC.

Before HILL, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

HILL, J.: The only question we must answer in this appeal is whether Christopher Imming is entitled to a court order compelling the City of Topeka to either repeal Ordinance No. 19915—an ordinance calling for the City to buy Heartland Park of Topeka—or hold a municipal election and let the voters decide the issue. Because the law creating STAR bonds—the method chosen by the City to finance its purchase—permits a referendum election only in cases where a protest petition is filed and Imming's petition is not a protest petition, we hold he is not entitled to a writ of mandamus compelling an election or repeal of the ordinance.

2

*Racing begins at Heartland Park in 1988.*

Heartland Park is a race track that was built in 1988 as a City-owned property. It was intended for racing events for Indy cars, sports cars, AMA motorcycles, and NHRA drag races. The NHRA drag strip has been financially successful, but for many reasons not pertinent to this appeal, the road course has received minimal usage. This lack of use resulted in bankruptcy and the closure of the facility in the fall of 2002. At that time, the track and its assets were purchased by a private individual. The management of the facility was subsequently transferred to Jayhawk Racing Properties, LLC.

In order to stimulate economic growth and development or redevelopment in various districts, the legislature enacted the Sales Tax and Revenue Bond Act now found in K.S.A. 2014 Supp. 12-17,160 *et seq*. The law permits cities to issue sales tax and revenue bonds for these purposes. Hence, these bonds are often labeled as STAR bonds. The sale of STAR bonds must be approved by the Kansas Secretary of Commerce. K.S.A. 2014 Supp. 12-17,164(b).

After the law was enacted, the City designated Heartland Park as a major motor sports complex and, at the same time, established the geographical boundaries of the park as a redevelopment district. At that time, a STAR bond project plan for the redevelopment of the area was approved by the City and the Secretary of Commerce, and over $10 million of STAR bonds were sold to finance the project.

Then, in June 2014, the City decided to acquire the reversionary interests to Heartland Park owned by Jayhawk Racing. Jayhawk Racing agreed to cancel its management contract and transfer its reversionary rights to the real estate at Heartland Park in exchange for the City's promise to pay Jayhawk Racing $2,392,117 for that interest. And the City would satisfy the debts Jayhawk Racing owed to CoreFirst Bank and Trust and some others. About the same time, the City, Jayhawk Racing, and

3

CoreFirst all acknowledged that Jayhawk Racing was in default on various loans made by CoreFirst. They signed an agreement that calls for payment of the debts through the issuance of new STAR bonds by the City. The parties call the documents reflecting these agreements the "Memorandum of Understanding" and the "Work Out Agreement."

To implement these agreements, the Topeka City Council adopted Ordinance No. 19915 on August 12, 2014. Basically, the Ordinance approved the Memorandum of Understanding and the Work Out Agreement. The Ordinance also amended the Heartland Park of Topeka STAR bond project plan by more than doubling the size of the redevelopment district and called for the issuance of $5 million of new STAR bonds.

Then, on October 8, 2014, Christopher Imming filed a petition with the Topeka City Clerk entitled, "A Petition for a New City of Topeka, Kansas Ordinance Relating to Heartland Park Topeka Redevelopment District and Additional Bond Authority." Citing K.S.A. 12-3013 as authority, the petition called for either the repeal of Ordinance No. 19915 or submission of the question of repeal to the voters at a municipal election. Imming collected 3,587 valid signatures on his petition.

Imming's petition produced a reaction at city hall. At the Council meeting on October 21, 2014, the Council discussed Imming's petition. The record of that meeting reveals that Council member Chad Manspeaker moved to suspend the Council rules to add to the agenda a resolution relating to the petition and proposed ordinance Imming filed with the City Clerk on October 8, 2014. The pertinent part of that resolution states:

> "NOW THEREFORE BE IT RESOLVED BY THE COUNCIL OF THE CITY OF TOPEKA KANSAS that in light of the significant opposition by Topeka residents to the Heartland Park ordinance, the city attorney is directed not to pursue any litigation challenging the purported petition and/or proposed ordinance including any declaratory judgment action."

4

Manspeaker's motion to suspend the rules failed on a vote of 6-3. The next day, the City Manager filed the petition seeking declaratory judgment. Imming filed an answer and counterclaim on October 31, 2014. In his counterclaim, Imming sought a writ of mandamus contending that his petition was valid and the City's governing body was obliged by law to act on the petition. Imming claimed that the City could either adopt an ordinance repealing Ordinance No. 19915 or submit the question of whether to repeal the ordinance to the City's qualified voters.

The declaratory judgment action filed against Imming asked the Shawnee County District Court to declare Imming's petition to be an invalid attempt at initiative and referendum. The City attacked Imming's petition in five ways. It alleged that Imming's petition was invalid as an initiative petition because it did not comply with the statutory requirements of K.S.A. 2014 Supp. 25-3602(b)(4). Secondly, Imming's petition was invalid as an initiative petition or a protest petition because it included more than a single point. The City also argued that Imming's petition was invalid as a protest petition under the STAR bonds referendum statute because it failed to comply with the requirements found in K.S.A. 2014 Supp. 25-3601(c). The fourth attack alleged that Imming's petition was invalid as an initiative petition because it sought to use the initiative statute to require an election on an administrative ordinance. And finally, the City alleged that the initiative and referendum law could not be used to set aside Ordinance No. 19915 because the ordinance is subject to referendum under the specific STAR bond referendum statute. Since Imming's petition did not comply with the STAR bond referendum statute, then in the City's view, the petition should be declared a nullity.

The law commands swift court determinations in cases such as this. K.S.A. 2014 Supp. 25-3601(e) requires a court to decide any action which challenges the validity of an initiative and referendum within 20 days of filing. Realizing this, the parties filed motions for summary judgment.

5

Jayhawk Racing moved to intervene, and the district court allowed the company to intervene in the lawsuit both as a matter of right and by permission. It joined the other parties and filed a motion for summary judgment, aligning itself with the arguments raised by the City.

Imming moved to dismiss the City's petition for declaratory judgment, alleging that the City had no standing to sue because its lawsuit was never authorized by the City Council and it was beyond the authority of the City Manager to file such an action. The court denied this motion.

The district court decided this case by ruling on the parties' motions for summary judgment. The court granted Imming summary judgment on three points. Basically, the court denied the contentions that Imming's petition was technically invalid. But the court did rule in the City's favor by finding that Ordinance No. 19915 is administrative in character and, therefore, exempt from the initiative and referendum law in Kansas. The court also decided that because there is a method in the STAR bond statute for filing a protest petition and obtaining a referendum election on the issuance of STAR bonds, then Ordinance No. 19915 could not be the subject of initiative and referendum because it was subject to a different kind of election. In other words, this ordinance was one of the statutory exceptions to the initiative and referendum statute.

Imming raises four issues in this appeal. First, Imming contends the district court erred when it denied his motion to dismiss the City's petition for declaratory judgment. Secondly, he contends that the district court erred when it decided that Ordinance No. 19915 was administrative. Next, Imming contends that the court incorrectly ruled that the proposed ordinance was subject to referendum under the STAR bond law and, therefore, not available for initiative and referendum. Finally, Imming contends the court erred when it did not grant his counterclaim for a writ of mandamus. We will address the issues in that order.

*Because the City did not authorize or ratify the filing of this lawsuit, it should have been dismissed.*

We turn first to the district court's ruling on Imming's motion to dismiss the City's declaratory judgment action. Claiming that the City Manager was not authorized to initiate litigation on the City's behalf, Imming contended that because the City's governing body did not authorize the declaratory judgment action, the court should dismiss the City's action as an *ultra vires* act of a municipal official. In other words, filing the lawsuit exceeded the power of his office.

In its ruling, the district court agreed with Imming that the City Manager was not authorized to challenge Imming's petition. But, it concluded that the defeat of Manspeaker's motion constituted ratification of the City Manager's actions. Additionally, the district court ruled that Imming's motion to dismiss was made moot by Imming's filing a counterclaim for mandamus. In the district court's view, the filing of the counterclaim prior to a ruling on the motion to dismiss gave the City standing to defend the counterclaim. We disagree with the district court's ruling that the City has ratified the filing of the declaratory judgment action but agree with its view on the effect of Imming's counterclaim for mandamus.

To us, Imming argues that only the governing body has standing to initiate litigation on the City's behalf. The district court clearly agreed with Imming on this point. That ruling was not cross-appealed by either the City or Jayhawk Racing, meaning it is now the settled law of the case and the doctrine of res judicata applies. See *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002). Therefore, we reject the City's attempt to raise this issue in its appellate brief. But we must explore the nature of ratification more in order to rule properly on this point.

7

Municipal government authority in Kansas is exercised by council members voting, in open meetings, on the various ordinances, resolutions, and motions that the issues of the day bring before the council. Thus, through public debate, discussions, and voting at open meetings, the interests of the public are protected and promoted. Cities are often called municipal corporations for good reasons, for the city council is the functional equivalent of a corporation's board of directors. A city's power to act begins with the city council. The governing body of the City of Topeka consists of nine district Council members and one mayor. While authority to act is often delegated to various agents, their actions cannot bind the City to a particular position or action unless the Council has authorized the agent to so act or has ratified the agent's act after the action has taken place.

Generally, in order to constitute ratification, there must be some affirmative action approving the action. The dictionary definition of "ratify" is "[t]o give formal sanction or approval to and thereby validate" some actions. Webster's II New College Dictionary p. 919. In the law of agency context, which is appropriate here, Black's Law Dictionary 1452 (10th ed. 2014) advises that ratification is "[t]he affirmance of someone's prior act, whereby the act is given the same effect as if it had been done by an agent acting with actual authority."

We see nothing in this record that indicates the City has taken any affirmative step to authorize the City Manager to file this declaratory judgment action. We also see nothing in this record that indicates the City has ratified the filing of this action against Imming.

We recognize that in some contexts a principal can ratify an act of an agent by *not repudiating* the act promptly upon learning of the action. This is sometimes referred to as acquiescence.

In *Theis v. duPont, Glore Forgan Inc.,* 212 Kan. 301, 510 P.2d 1212 (1973), the Kansas Supreme Court agreed with the district court that when a customer selling pork belly contracts failed to promptly repudiate the futures contracts made by a futures broker on his behalf, then such failure to repudiate constituted ratification of the contracts made on his behalf. The court considered the number of trades made by the broker and the inaction of the customer even though he had knowledge of the trades.

Further, it is clear that the burden is on the principal to promptly repudiate an agent's action once the action becomes known. Once the act is discovered, the principal may not "'sit back and see if it will benefit or suffer from the agent's actions. Instead, a principal who receives notice of an unauthorized act of an agent must promptly repudiate the agent's actions or it is presumed that the principal ratified the act.'" *Bunge Milling, Inc. v. City of Atchison*, 49 Kan. App. 2d 325, 333, 310 P.3d 1064 (2013). In *Bunge Milling*, the milling company, while resisting the attempted annexation of its land into the city, attempted to repudiate the recording of a survey plat of its ground 5 years earlier by a surveyor it had hired. The company did not know the plat had been recorded until the city tried to annex the land. Lack of knowledge of the act of the agent was crucial in that case.

But the City is a unit of government subject to the Kansas Open Meetings Act for its actions. There are different legal expectations for municipal government actions than those expected of a private individual selling pork belly contracts or a milling company surveying its land. In dealing with cities, there must be some affirmative act to ratify or some action taken by the governing body that is consistent with ratification in order to ratify some unauthorized act of an agent of the city. Otherwise, cities would be able to avoid a transparent and democratic process by simply acquiescing in the actions of its agents who lack specific authority for their actions, with no express ratification vote required. Such a holding would mock the democratic process. Cases outside of Kansas illustrate our point.

9

In *City of Kenai v. Filler, A.I.A.*, 566 P.2d 670 (Alaska 1977), litigation arose between the city and an architect who was hired to design a civic center. The contract for services was negotiated between the architect and the city manager. After issues arose and litigation began, the district court found that the city council had ratified the city manager's modified contract. The Supreme Court of Alaska concluded that the ratification

> "may be made by the affirmative action of the proper officials or by any action or non-action which in the circumstances amounts to an approval of the contract."
> 566 P.2d at 675.

Although the city council in *Kenai* did not specifically ratify a modified contract, it *did* take action by *voting* to direct the city manager to let the bids on the modified project.

In a Florida case, the city manager terminated a contract, an act which exceeded the scope of the city manager's authority. *Panama City v. T & A Utilities Contr.*, 606 So. 2d 744, 745-46 (Fla. Dist. App. 1992). After reviewing the case and the findings of the trial court, the District Court of Appeal of Florida determined that the city council "clearly ratified the Manager's act" when it voted to award a contract to a different contractor after "the Manager had explained that Contractors had been terminated." 606 So. 2d at 747. The appellate court was willing to make this finding because ratification was clearly the intent of the governing body and was "the only conclusion consistent with reason and common sense." 606 So. 2d at 747.

This is not a new concept in the law of ratification. In *American H. L. Co. v. City of Benton*, 132 Ark. 41, 200 S.W. 276 (1918), the Arkansas Supreme Court, in a lawsuit seeking the recovery of the cost of lumber used in a street repair, ruled that discretion had been bestowed on the street committee to take the steps necessary to repair the street and, therefore, the city was liable for the cost of the lumber. The court stated: "In order to

10

have ratification, there must be some affirmative action by the proper officers, or some negative action, which of itself would amount to an approval of the matter in question." 200 S.W. at 277.

Finally, the case that is most illuminating comes from the Idaho Supreme Court. In *City of McCall v. Buxton*, 146 Idaho 656, 658, 201 P.3d 629 (Idaho) (2009), the city manager, on behalf of the city, and without the prior approval of the city council, filed a legal malpractice action against two lawyers that had represented the city. In seeking dismissal of the lawsuit, the lawyers contended that the action against them was barred since the city had not authorized the filing of the lawsuit and the city could not later ratify a void act.

In rejecting the lawyers' argument, the Idaho Supreme Court found that the city manager was an agent of the city council, and then ruled:

> "A principal may ratify the unauthorized act of its agent with the effect being essentially the same as if the act had been authorized when it occurred . . . . Therefore, the fact that the city manager did not have authority to authorize the commencement of this lawsuit does not require dismissal where the city council *later ratified that action in a meeting that complied with the open meeting laws*." (Emphasis added.) 146 Idaho at 667.

The record here clearly indicates that the City did not authorize the filing of this declaratory judgment lawsuit. In a deposition, the mayor testified that at its October 21, 2014, meeting, the Council did not take any affirmative action to authorize the City Manager to file this litigation. The only action taken by the Council on that date was the refusal to suspend the Council's rules in order to allow a discussion on whether the City Manager should be directed to not file the declaratory judgment action. All that we can glean from that vote is that six members of the Council did not want to suspend the rules and consider an item that was not on its published agenda. Under the standard set out in

11

*City of McCall*, the Council's refusal to consider the issue cannot be a ratification of the filing of a lawsuit. See 146 Idaho at 666.

The most salient point in *City of McCall* is that a city must take action in compliance with the open meetings law. Our search of this record reveals no action was taken by the City in any open meeting concerning filing the declaratory judgment action.

Therefore, under the reasoning of *City of McCall*, the City Council could not ratify the City Manager's decision to file this lawsuit without an open, affirmative vote on the matter or by taking some action consistent with ratification. The defeat of Manspeaker's motion to suspend the rules, which is the only act that the City urges us to equate with ratification, meant only the Council chose not to suspend the rules that evening. The refusal to amend the Council's procedural rules is ineffective as implied ratification. Besides, the lawsuit was not filed until the next day and Manspeaker's motion could not be rationally construed as authorization to file a declaratory judgment action. The district court erred in its ruling on ratification. Imming's motion to dismiss should have been granted on this ground.

But, even though we have so ruled, that does not mean our work is finished. Imming filed a counterclaim seeking a writ of mandamus compelling the City to repeal the ordinance or hold an election. We must, therefore, review all of the substantive issues raised by the City in its declaratory judgment action.

*Ordinance No. 19915 is a legislative ordinance.*

Administrative ordinances are not subject to the initiative and referendum petition process. See K.S.A. 12-3013(e)(1). The district court incorrectly concluded that Ordinance No. 19915 is an administrative ordinance. It ruled so, based on a belief that the Ordinance required specialized knowledge of municipal government and finances.

12

Imming concedes in his brief that Ordinance No. 19915 has some administrative matters but contends that the primary nature of the ordinance is legislative, since the subject of the ordinance is the acquisition of a racing facility financed through the sale of sales tax and revenue bonds.

Caselaw directs that we must look to the ordinance that the electors seek to repeal in order to decide if it is legislative or administrative. *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 539, 874 P.2d 667 (1994).

The most recent case on this issue is *McAlister v. City of Fairway*, 289 Kan. 391, 399, 212 P.3d 184 (2009), which noted that deciding whether an ordinance proposed under the initiative and referendum statute is administrative or legislative depends on the unique facts of each case. When making this determination, appellate courts should keep in mind that in Kansas, "the initiative and referendum process under K.S.A. 12-3013 has long been judged on a more demanding basis than in some other locales." 289 Kan. at 401.

The *McAlister* court refined the test for determining whether an ordinance is administrative or legislative in nature by establishing these guidelines:

1. An ordinance that makes new law is legislative; while an ordinance that executes an existing law is administrative. Permanency and generality are key features of a legislative ordinance.

2. Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal with a small segment of an overall policy question generally are administrative.

13

3.      Decisions which require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of policy.

4.      If the subject is one of statewide concern in which the legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an "administrative" characterization. 289 Kan. at 403-04.

Looking at the first element of the *McAlister* test, we conclude that Ordinance No. 19915 creates a new law. First, it doubles the size of the redevelopment district. It permits the acquisition of Jayhawk Racing's interests to the racetrack, thus securing title in the property with the City. The Ordinance eliminates any debtors claim on the property. Thus, the City achieves an unencumbered interest in the track. This is a general and permanent solution to the revival of the development district.

Next, the declaration of public policy made in the Ordinance makes this a legislative act. Section 13 of the Ordinance states:

"The Governing Body hereby finds and determines that the proposal to request authority to issue additional STAR bonds in excess of the amount previously approved is appropriate, desirable, and necessary to promote, stimulate, and develop the general and economic welfare of the City of Topeka, and to promote the general welfare of its citizens."

These are legislative findings, not administrative.

14

We agree that there are administrative aspects to this Ordinance. The bonding details found in the Ordinance are examples of that.

Finally, we cannot see this as a subject of statewide concern as contemplated by the *McAlister* test. The acquisition of a racetrack by the City is clearly a local concern.

We agree with the district court that the centerpiece of Ordinance No. 19915 is the acquisition of the Heartland Park Raceway. This overriding purpose of the ordinance simply outweighs the procedural details that are necessary to obtain STAR bonds. It does not appear that Ordinance No. 19915's administrative characteristics outweigh the general purpose of the ordinance, which is the purchase of a race track.

We reject the City's (joined by Jayhawk Racing) assertion that simply because this project is to be financed by STAR bonds, then this is automatically an administrative ordinance beyond the reach of initiative and referendum. For support, both appellees cite *Rauh v. City of Hutchinson*, 223 Kan. 514, 575 P.2d 517 (1978).

In 1974, Cargill, Inc. approached the city commission of Hutchinson about issuing industrial revenue bonds to refinance major plant improvements and expansion of a nearby salt plant. Based on K.S.A. 12-1740 *et seq.*, the city issued $5 million of industrial revenue bonds. The Supreme Court ruled the action by a city governing body in the adoption of ordinances implementing the issuance of industrial revenue bonds under K.S.A. 12-1740 *et seq.* is administrative in character and not subject to initiative and referendum under the provisions of K.S.A. 12-3013. *Rauh*, 223 Kan. 514, Syl. ¶ 6.

The *Rauh* court ruled that the legislature enacted broad general provisions and policy and delegated to the city the administrative function of "filling in the details" when it comes to issuing industrial revenue bonds. When discussing the submission of such questions to a referendum, the court opined:

15

"One may question the reasoning behind the legislature's action in not providing such procedures (referendum) under K.S.A. 12-1740 *et seq*. However, a close examination of the statutes may provide an answer. The statutes themselves contain strong and binding safeguards for the public. The obligations for payment of the bonds and interest thereon shall not in any respect be payable as a general obligation of the city nor shall they be payable in any manner from taxation. The bonds are payable solely and only from the revenues derived from the facilities finances." 223 Kan. at 521.

If this case dealt with industrial revenue bonds, *Rauh* would be pertinent, but this case deals with STAR bonds, an entirely different financing instrument. Industrial revenue bonds can never be an obligation of the City. There is no method for filing a protest petition in the case of industrial revenue bonds. Thus, *Rauh* is neither controlling nor persuasive.

As we decide whether this Ordinance is administrative or legislative, a review of several cases is helpful at this point. Ordinances dealing with public improvements appear to be legislative.

In *State, ex rel., v. Jacobs*, 135 Kan. 513, 517, 11 P.2d 739 (1932), the Kansas Supreme Court granted a writ of mandamus when it found an ordinance declaring the city's intent of widening a street in Hays was legislative. The real gist of the ordinance was the determination to widen Park Avenue and provide for the payment of the costs thereof. This ordinance was distinctly legislative in nature, and the method of payment was incidental thereto. The ordinance provided for condemnation and appropriation of private property for such widening purposes.

In *Jacobs*, 135 Kan. at 516, the court distinguished *State, ex rel., v. City of Kingman*, 123 Kan. 207, 254 P. 397 (1927), where it was held after a resolution, instead of an ordinance, had been adopted and published by the commissioners declaring the improvement of the street to be necessary, that the later ordinance providing for the

16

details of painting the same was administrative and not subject to the referendum statute. Thus, the resolution was legislative and the ordinance was administrative.

The *Jacobs* court also contrasted *Palmer v. Munro*, 123 Kan. 387, 255 P. 67 (1927), and *State, ex rel., v. Morton*, 128 Kan. 125, 276 P. 62 (1929), where it was held that the cooperation of the city government with the federal and state authorities in establishing a connecting road through the city was an administrative detail and not subject to the control of the referendum statute relating to legislation by ordinance.

In *State, ex rel., v. Charles*, 136 Kan. 875, 878, 18 P.2d 149 (1933), the Supreme Court ruled that the question concerning the ordinance for building and equipping a municipal gas plant was legislative in nature and, therefore, subject to an initiative and referendum.

In *State, ex rel., v. City of Pratt*, 92 Kan. 247, 252, 139 P. 1191 (1914), the Supreme Court ruled that the ordinance dealing with the creation of an electric plant in the city of Pratt was a legislative question and, therefore, subject to initiative and referendum.

On the other hand, a municipality's exercise of some home rule powers appears to be administrative. In *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 874 P.2d 667 (1994), Wichita used a charter ordinance in an attempt to exempt itself from certain provisions of the Kansas Water Pollution Act. The city also adopted a resolution to establish a storm water utility system. The Kansas Taxpayer Network sought repeal of the ordinance through initiative and referendum. The Supreme Court ruled that the ordinance in question was administrative in nature. The court held that the operation, management, and financing of a citywide storm water management system reasonably fits within the context of decisions that require specialized knowledge and experience with respect to city management. This was especially true because the city

17

already owned the system. The physical structure of the system maintenance and fee assessment in collection all fit within the purview of the city's expertise. 255 Kan at 540.

In *City of Lawrence v. McArdle*, 214 Kan. 862, Syl. ¶ 5, 522 P.2d 420 (1974), the Supreme Court held that an ordinance attempting to equalize firemen's salaries with policemen's salaries was administrative because it dealt with pay issues and could not be permanent and, therefore, legislative and subject to initiative and referendum.

After applying the tests found in *McAlister* and considering all of these cases, our view remains that Ordinance No. 19915 is legislative and not administrative.

This Ordinance purchased Heartland Park, a legislative act. We hold that the district court erred on this point. We now turn to the deciding issue of the case—whether Imming is entitled to a writ of mandamus.

*Ordinance No. 19915 is subject to referendum or election under another statute and therefore cannot be a subject of initiative and referendum.*

Ultimately, we must decide whether Ordinance No. 19915 is subject to initiative and referendum. Therefore, in deciding this, we must consider two statutes.

First, the initiative and referendum law sets out when and how the initiative petition procedure is to be used. The statute allows the citizens of the city to petition the city council to adopt a proposed ordinance. Once a proper petition is presented, the city council may choose to adopt it by a majority vote of the council within 20 days of its proper submission or, if it fails to pass it within 20 days, the city council must submit the ordinance to a vote of the qualified voters in the city. K.S.A. 12-3013(a). The statute also makes it clear when the initiative and referendum process cannot be used. K.S.A. 12-

18

3013(e)(3) states: "[O]rdinances subject to referendum or election under another statute" cannot be the subject of an initiative and referendum petition.

This leads us to the second statute we must consider. K.S.A. 2014 Supp. 12-17,169(b)(2) creates the procedure for challenging the issuance of STAR bonds. The statute states that the bonds will issue unless a "protest petition signed by 3% of the qualified voters of the city is filed." If a protest petition with sufficient signatures is submitted within the time allowed, "no full faith and credit tax increment bonds shall be issued until the issuance of the bonds is approved by a majority of the voters voting at an election thereon." K.S.A. 2014 Supp. 12-17,169(b)(2).

So the question we must decide is whether Ordinance No. 19915 is subject to referendum or election under K.S.A. 2014 Supp. 12-17,169(b)(2). If it is, then it cannot also be subject to the initiative process under K.S.A. 12-3013.

Obviously, the legislature has directed that many questions like these must be decided by the use of protest petitions authorized in many different laws, while there is but one way to obtain initiative and referendum relief and that is directed by K.S.A. 25-3601 *et seq*. There are almost 40 different areas where one may obtain a referendum on a specific project through the use of protest petitions. This is especially true when a city authorizes a tax or a bond issue. See *Ramcharan-Maharajh v. Gilliland*, 48 Kan. App. 2d 137, 141, 286 P.3d 216 (2012). There is no independent, constitutional right to an initiative; any authority to hold a referendum must come from the legislature. *Ramcharan-Maharajh*, 48 Kan. App. 2d at 140.

By exempting ordinances subject to referendum or election under another statute, from the initiative process, the legislature has declared that such questions are to be decided by using the more specific statutory provision. In this case, the STAR bond protest petition process governs.

19

Imming argues that the district court erred by expanding K.S.A. 12-3013(e)(3) to the entirety of Ordinance No. 19915. Arguing that this is a case of first impression, since the term "referendum" is not defined by the legislature and has not been evaluated by a Kansas appellate court, Imming believes that only Section 11 of Ordinance No. 19915 is subject to a protest petition. That is the section of the ordinance that established the issuance of STAR bonds. Imming believes that the City could still accomplish the purchase of Heartland Park through the use of a different type of bond.

Black's Law Dictionary 1471 (10th ed. 2014) defines "referendum" as "[t]he process of referring a state legislative act, a state constitutional amendment, or an important public issue to the people for final approval by popular vote." This is the process that appears to be established by K.S.A. 2014 Supp. 12-17,169(b)(2). If a protest petition with sufficient signatures is submitted within the time allowed, "no full faith and credit tax increment bonds shall be issued until the issuance of the bonds is approved by a majority of the voters voting at an election thereon." K.S.A. 2014 Supp. 12-17,169(b)(2).

Imming's suggestion that because the legislature failed to include the word "protest" in K.S.A. 12-3013(e)(3), then the election procedure set out in the STAR bond law does not exclude Ordinance No. 19915 from the initiative and referendum petition process, is unpersuasive. That argument ignores the fact that the protest petition is merely the vehicle to collect signatures and force a vote. The result of the protest petition is an election which puts an important issue of public policy to the people for final approval; that is to say, an event which appears to be both a referendum and an election as set out in the definitions above.

Imming's argument requires us to examine the ordinance in some detail. The description of Ordinance No. 19915 says that its purpose is to "amend [] the Heartland Park Redevelopment Project Plan, and approv[e] a request to the Secretary of Commerce of the State of Kansas for authority to issue additional sales tax and revenue ('STAR')

20

bonds in excess of the amount previously approved." The STAR bonds are mentioned through most of the introductory sections of the ordinance. This language was emphasized by the City Attorney in his deposition when he testified that the purpose of Ordinance No. 19915 was to approve the amended plan.

There are 15 active sections in the Ordinance. Section Three confirms that the expanded redevelopment district is indeed a STAR bond project area. Section Nine confirms that the amended project plan is "the STAR bond project plan" for the amended redevelopment district. Section 11 is the section that authorizes the City to issue full faith and credit STAR bonds in the amount of $5,000,000 to finance the amended project plan. Section 14 authorizes the City Manager to apply for the approval of the new STAR bonds from the Department of Commerce. Ordinance No. 19915 also incorporates by reference the amended project plan. The first paragraph of that amended project plan describes the process for obtaining STAR bonds, and there are mentions of STAR bond financing throughout the amended project plan.

Basically, Imming is arguing that only a portion of the Ordinance was subject to referendum or election under another statute; therefore, the question of the purchase of Heartland Park should still be subject to initiative and referendum. That argument ignores the fact that STAR bonds are referred to throughout both the ordinance and the amended project plan.

In addition, there is no severability provision within Ordinance No. 19915. In our view, given how intertwined the STAR bond funding is with the rest of the ordinance, it does not appear that Ordinance No. 19915 does anything if the STAR bond provisions are removed. How can the City acquire the reversionary interest if the City does not pay for it?  How can the City validly designate a new district without issuing new STAR bonds to be financed through sales and revenue taxes?  Simply put, if you attack this ordinance you are attacking the issuance of STAR bonds.

21

The only way that Imming could prevent application of K.S.A. 12-3013(e)(3) from invalidating his petition is if the protest petition mechanism established by K.S.A. 2014 Supp. 12-17,169(b)(2) is not a referendum or election, as contemplated by the statute.

None of the parties contend that Imming's petition was a protest petition of the issuance of STAR bonds. The wording of K.S.A. 2014 Supp. 12-17,169(b)(2) is clear. A citizen must challenge the issuance of STAR bonds by circulating a protest petition. If that protest petition garners enough signatures, the matter of the issuance of STAR bonds must be placed for a popular vote. This election is an "election under another statute" as contemplated by the legislature in K.S.A. 12-3013(e)(3).

Given that Imming's initiative petition is not a protest petition, it falls within the statutory exclusion for initiative and referendum. This issue cannot legally be the subject of initiative and referendum.

K.S.A. 60-801 directs that mandamus is a proceeding to compel some board or some corporation to perform a specified legal duty. Imming is not entitled to a writ of mandamus because the Council is not legally required to repeal Ordinance No. 19915 or hold a referendum election.

We affirm the district court's denial of Imming's claim for the issuance of a writ of mandamus.

22