NOT DESIGNATED FOR PUBLICATION

No. 124,556

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENNIS W. SCOTT, et al.,
*Appellants*,

v.

CITY OF LEAWOOD, KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed December 2, 2022. Affirmed.

*Andrew I. Spitsnogle*, *John M. Duggan*, and *Alex M. Johnson,* of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellants.

*Michael K. Seck*, of Fisher, Patterson, Sayler & Smith, L.L.P., Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.

PER CURIAM: Dennis and Kristine Scott appeal the district court's ruling in favor of the City of Leawood in a dispute that arose after the Scotts placed two stone columns in the public right-of-way of a newly constructed cul-de-sac that is required to be dedicated to the City as part of a residential construction project. Although the Scotts submitted plans and specifications to the City of Leawood for the cul-de-sac that depicted the required public right-of-way, those plans and specifications did not show that they intended to place stone columns in the right-of-way. Ultimately, the City of Leawood informed the Scotts that one of the two stone columns must be removed from the public

1

right-of-way before it would accept dedication of the cul-de-sac. In response, the Scotts filed a petition in district court seeking a declaratory judgment and other relief.

On appeal, the Scotts contend that the district court erred in concluding that a building codes inspector employed by the City of Leawood did not have authority to authorize the placement of the stone columns in the public right-of-way of the required cul-de-sac. The Scotts also contend that the district court erred in concluding that they had failed to exhaust administrative remedies. Based on our review of the record in light of Kansas law, we conclude that the building codes inspector did not have actual authority to authorize or approve the placement of the stone columns in the public right-of-way of the cul-de-sac to be dedicated to the City. As a result, it is unnecessary for us to reach the issue of exhaustion of administrative remedies. Thus, we affirm the district court.

FACTS

On September 17, 2018, the Scotts filed a petition against the City of Leawood in which they sought a declaratory judgment, asserted a claim for equitable estoppel, and requested injunctive relief. In the alternative, the Scotts asserted a claim for compensatory damages. After completion of discovery, the parties filed cross-motions for summary judgment that were denied by the district court. On February 21, 2021, the district court commenced a two-day bench trial utilizing interactive live streaming technology.

Prior to trial, the parties stipulated to many of the facts. During the trial, the district court also heard the testimony of five witnesses. In addition, the district court reviewed several exhibits that were admitted into evidence. After considering the stipulated facts as well as the evidence presented by the parties at trial, the district court

entered a comprehensive 24-page journal entry of judgment in which it ruled in favor of the City.

Although the parties disagree regarding the district court's legal conclusions, neither party challenges the district court's findings of fact. Moreover, we note that each of the district court's factual findings was supported by a citation to the record. Thus, we adopt the findings of fact as set forth by the district court in its journal entry of judgment.

In summary, the district court found that in 2015 the Scotts purchased real property in Leawood to build a new house. The Scotts subsequently retained Ambassador Construction to serve as their contractor. In doing so, they authorized Keith Eymann—who is part owner of Ambassador Construction—to act on their behalf in dealing with the City of Leawood during the construction process. In particular, the Scotts granted Eymann the authority to act on their behalf to obtain the necessary permits and approvals from the City to complete the project.

Prior to beginning construction of the house, Eymann participated in a pre-application meeting with representatives of the City of Leawood's Public Works Department and Planning Department to review the required plans for the construction project. As a result, Eymann knew that the City required a cul-de-sac to be constructed to connect the Scotts' property to the existing street in order to obtain sufficient frontage. Eymann also knew that the City required the cul-de-sac to be dedicated to the City upon approval. In addition, he knew that there would need to be a public right-of-way surrounding the required cul-de-sac.

On December 1, 2015, Eymann filed a "Residential & Commercial Building Permit Application" with the City of Leawood to begin the process of obtaining a building permit. Prior to filing the application, Eymann knew that there were limitations in Leawood regarding what could be placed in a public right-of-way. The City ultimately

accepted the plans and issued a building permit for the construction of the home in January 2016. On behalf of the Scotts, during the construction process, Eymann applied for and obtained the necessary right-of-way permit and submitted plans to the City that included the required cul-de-sac and public right-of-way. However, the plans did not show the stone columns that are the subject of this case.

At some point, Ambassador Construction subcontracted with Towner, Inc.— which is a concrete construction company—to perform the concrete work on the Scotts' new residence. The services provided by Towner, Inc. included work on the basement floor, the driveway, and the driveway approach. In addition, Towner, Inc. was asked to build the footings to support the two stone columns that the Scotts desired to place in the public right-of-way in order to mark the entrance into their property.

It appears that the footings were placed based on undated drawings prepared by Richard Barrett—a landscape architect retained by the Scotts—that showed where the stone columns were to be located. The north column was to be decorative only. On the other hand, the south column was to house both a mailbox and a security camera.

It is undisputed that Barrett's landscape drawings were never submitted to the City. Furthermore, the original plans for the cul-de-sac filed with the City were never amended to depict the desired placement of stone columns in the public right-of-way. In fact, it is undisputed that neither Eymann nor anyone else acting on behalf of the Scotts ever contacted the City of Leawood about the Scotts' intent to place the stone columns in the public right-of-way of the cul-de-sac required by the City to be built as part of the approval process for the construction project.

As the district court found, the City of Leawood has separate inspectors who are employed by the Public Works Department and the Codes Administration Department. The Public Works Department has its own hotline to call to request inspections involving

4

right-of-way and other infrastructure issues. Similarly, the Codes Administration Department has a separate hotline to call to request inspections of construction work performed within the City for building code compliance.

Eymann testified that he knew there were two separate hotlines controlling inspections by the Codes Administration Department and the Public Works Department. Likewise, a principal of Towner, Inc. testified that he also knew that the Public Works Department and the Codes Administration Department are separate and responsible for conducting inspections within their own area of responsibility. The representative of Towner also testified that he was familiar with the process for requesting public right-of-way inspections.

As indicated above, Towner, Inc. was retained on behalf of the Scotts to prepare the footings upon which the two stone columns were constructed. On July 20, 2017, Geoff Bowen—who is employed as a building codes inspector for the Codes Administration Department—inspected the work performed by Towner, Inc. on the footings. He did so in response to a voicemail left on the Codes Administration Department's hotline by a representative of Towner, Inc. As the district court found, Bowen is not an employee of the Public Works Department nor does he report to the Director of Public Works.

The technician in the Codes Administration Department who listened to the voicemail requesting an inspection of the footings prepared a "Codes Administration Inspection" form that was then given to Bowen. The technician listed the date, the permit number, the contact's name, the contractor's name, and the contact phone number. In addition, the word "footing" is circled on the form. The technician also wrote "gatepost and mailbox" on the inspection form that was given to Bowen.

After going to the construction site to inspect the work on the footings, Bowen completed the remainder of the inspection form. In doing so, he noted that the work on the footings had been performed in a satisfactory manner. There is no mention in the inspection form regarding the placement of the footings in the public right-of-way of the cul-de-sac required by the City. Similarly, there is no evidence in the record to establish that the placement of the stone columns was discussed during Bowen's inspection of the work performed on the footings. The record reflects that the two stone columns were ultimately constructed in the public right-of-way and that each column is located only about six to seven inches from the curb of the cul-de-sac.

On April 25, 2018, Tom Klotz—who is one of the right-of-way inspectors employed by the Public Works Department—inspected the cul-de-sac prior to dedication to the City and completed a final "Right-of-Way Inspection-Observation Report." In his report, Klotz indicated that the north column located inside the public right-of-way would need to be removed. Although the south column is also in the public right-of-way, Klotz indicated that it could remain because it contained a mailbox allowed by United States Postal Service regulations. Nevertheless, Klotz indicated that the camera and wiring in the south column would need to be removed. To date, the Scotts have not removed the north column. Moreover, the City of Leawood has not accepted dedication of the required cul-de-sac nor has it issued a permanent occupancy permit for the Scotts' house.

Based on the district court's findings of fact, it determined that the building codes inspector had no actual or apparent authority to authorize the placement of the stone columns in the public right-of-way of the cul-de-sac required to be dedicated to the City of Leawood. Accordingly, the district court concluded that the Scotts were not entitled to a declaratory judgment nor were they entitled to recover under any of their legal theories. In addition, the district court ordered the Scotts to remove the north column from the public right-of-way and ordered the City to issue a certificate of occupancy to the Scotts once the column is removed.

6

Thereafter, the Scotts filed a timely notice of appeal.

ANALYSIS

Although the parties have presented several interesting legal arguments in support of their respective positions, they agree that this appeal turns on the issue of whether a building codes inspector employed by the City of Leawood had the *actual authority* to authorize the placement of the north column in the public right-of-way of the cul-de-sac that was required to be dedicated to the City. We note that the placement of the south column was never an issue because the parties agree that it is subject to federal regulations issued by the United States Postal Service. Thus, we must decide only whether the building codes inspector who inspected the columns' footings had the actual authority to authorize the placement of the north column in the public right-of-way of the cul-de-sac and, if so, whether he exercised such authority.

At the outset, we note that the Kansas Supreme Court has held that the private rights of an adjacent landowner to a public street "are subordinate to the right of the public to proper use of the street or highway, so that the exercise of the rights of abutting landowners is subject to reasonable regulation and restriction for the purpose of providing reasonably safe passage for the public." *Frick v. City of Salina*, 290 Kan. 869, 887, 235 P.3d 1211 (2010) (citing *Smith v. State Highway Commission*, 185 Kan. 445, 452, 346 P.2d 259 [1959]). In *Frick*, our Supreme Court found that a municipality's moratorium on the construction of improvements within a public right-of-way in order to promote "public safety, general welfare, and economic concerns" to be reasonable. 290 Kan. at 892. Thus, we find that the City of Leawood—officially acting through its city council— has the authority to place reasonable restrictions on the use of a public right-of-way adjacent to a street that has or will be dedicated to the City.

In discussing the delegation of authority by the governing body of a municipality to its agents or employees, this court has held:

> "Municipal government authority in Kansas is exercised by council members voting, in open meetings, on the various ordinances, resolutions, and motions that the issues of the day bring before the council. Thus, through public debate, discussions, and voting at open meetings, the interests of the public are protected and promoted. Cities are often called municipal corporations for good reasons, for the city council is the functional equivalent of a corporation's board of directors. A city's power to act begins with the city council. . . . While authority to act is the often delegated to various agents, their actions cannot bind the City to a particular position or action unless the Council has authorized the agent to so act or has ratified agent's act after the action has taken place." *City of Topeka v. Imming*, 51 Kan. App. 2d 247, 252-53, 344 P.3d 957 (2015).

In other words, the authority of a municipal government to protect public safety and welfare rests with the municipality's governing body. In this case, the City of Leawood exercises its authority through a city council composed of eight council persons and a mayor. Although a municipality may ratify the actions of an employee or agent under certain circumstances, there is no allegation that the City of Leawood's council has done so in this case.

Consequently, there must be some affirmative step taken by a municipality's governing body to explicitly delegate its authority to an agent or employee. Likewise, there must be some affirmative step taken by a municipality's governing body to explicitly ratify the actions of an agent or employee who has acted outside the scope of his or her authority. "Otherwise, cities would be able to avoid a transparent and democratic process by simply acquiescing in the actions of its agents who lack specific authority for their actions, with no express ratification vote required. Such a holding would mock the democratic process." *Imming*, 51 Kan. App. 2d at 254. Here, there is no evidence in the record to establish that the City of Leawood ever took the affirmative step

8

of granting building codes inspectors the actual authority to approve or disapprove the placement of structures within a public right-of-way.

The Scotts argue that a building codes inspector employed by the City of Leawood's Code Administration Department had the actual authority to approve the placement of the north column in the public right-of-way of the cul-de-sac required to be dedicated to the City as part of the residential construction project. We note that before the district court the Scotts argued that the building codes inspector also had the apparent authority to approve the placement of the north column in the public right-of-way. However, they have dropped their apparent authority argument on appeal.

In support of their argument that the building codes inspector had the actual authority to approve the placement of the north column in the public right-of-way, the Scotts refer us to City of Leawood Code § 4-203 (2020), which applies "to the construction, alteration, relocation, enlargement, replacement, repair, equipment use and occupancy, location, maintenance, removal and demolition of every building or structure or any appurtenances connected or attached to such buildings or structures." Elsewhere, the City of Leawood Building Code states that "[t]he Building Official is hereby authorized and directed to enforce the provision of this Building Code. . . . The Building Official shall be known as the codes administrator, and such term shall include his/her authorized representatives." City of Leawood Code § 4-205 (2020). While section 4-205 delegates enforcement of the Building Code to the Codes Administration Department, nothing with these ordinances explicitly delegates the actual authority to approve or disapprove the placement of objects within a public right-of-way to the Codes Administration Department or any of its building codes inspectors. On their face, we find that these ordinances make no reference to determining the types of objects that can and cannot be placed in a public right-of-way.

9

The Scotts also cite to *Skaggs v. City of Pratt*, 183 Kan. 424, 327 P.2d 1083 (1958) and its progeny for the proposition that representations made by "properly-designated officials" can bind a municipality under certain circumstances. However, it is important to recognize that the *Skaggs* decision goes on to state the "properly-designated officials" must be acting "under the proper exercise of their authority" in order for their representations to be binding on a municipality. 183 Kan. at 429. Here, there is no evidence that the City of Leawood—properly or improperly—designated Bowen or other employees of the Codes Administration Department with the authority to approve or disapprove the placement of objects in a public right-of-way.

A review of the undisputed evidence shows that a subcontractor working for the Scotts called the Codes Administration Department and left a message requesting an inspection of the footings for the stone columns. In response, the Codes Administration Department sent Bowen—who was one of the department's building codes inspectors—to inspect the work done on the footings of the columns. The record reflects that Bowen completed his inspection on the morning of July 20, 2017, and noted on his report that the work on the "Prep base" of the columns was satisfactory. Significantly, there is nothing in the report to indicate that Bowen made any representations to the Scotts or their agents regarding the placement of the footings in the public right-of-way of the required cul-de-sac.

The City of Leawood does not dispute that Bowen had the actual authority to inspect the *work* being performed on the columns for building code compliance. However, it disputes that Bowen had the actual authority to approve the *placement* of the columns in the public right of way of the cul-de-sac to be dedicated to the City. We agree with the position articulated by the City that the approval of the *work* by a building codes inspector employed by the Codes Administration Department is not the equivalent of the approval of the *placement* of items in a public right of way.

We find no evidence in the record to establish that the Codes Administration Department was called upon to authorize the placement of the columns in the right-of-way of the cul-de-sac required to be dedicated to the City of Leawood. Rather, a review of the evidence in the record reveals that the subcontractor called the Codes Administration Department for an inspection of the work on the footings of the columns. We also find no evidence in the record to establish that the City of Leawood ever granted Bowen—or any other employee of the Codes Administration Department—the actual authority to authorize the placement of structures in a public right-of-way.

We pause to note that even if Bowen had been granted actual authority to make such decisions regarding the placement of items in a public right-of-way, there is still no evidence in the record to establish that he ever represented to the Scotts or their agents that it was acceptable for the columns to be placed in the public right-of-way of the cul-de-sac required to be dedicated to the City of Leawood. Similarly, there is no evidence in the record to establish that Bowen—or any other employee of the Codes Administration Department—ever discussed with the Scotts or their agents the subject of whether it was acceptable to place the columns in the required public right-of-way either prior to or during the construction process. Furthermore, there is no evidence in the record to establish that anyone acting on behalf of the City of Leawood has ever explicitly agreed to or authorized the placement of the north column in the public right-of-way.

We recognize that the Scotts relied upon their contractor or subcontractors to act on their behalf in dealing with the City of Leawood during the construction process. However, they have not named them as defendants in this lawsuit. Hence, we do not render an opinion regarding the potential liability of the contractor and/or the subcontractors to the Scotts regarding the placement of the columns.

Notwithstanding, "[w]hen an agent acts with the principal's authorization, the agent's acts are generally imputed to the principal." *Bicknell v. Kansas Dep't of Revenue*,

11

315 Kan. 451, 503, 509 P.3d 1211 (2022). Here, a review of the record reveals that Eymann knew that the City of Leawood had requirements regarding the type of objects that could and could not be placed in a public right-of-way. Likewise, Eymann testified that he knew early in the process of constructing the Scotts' residence that the City of Leawood would require the construction of a cul-de-sac to be dedicated to the City and that the dedication would include a public right-of-way adjacent to the required cul-de-sac.

In addition, Eymann testified that he knew that the required cul-de-sac—including the public right-of-way—was subject to final approval by the City of Leawood. Consistent with this testimony, the record reflects that Eymann filed right-of-way permit applications relating to the construction of the required cul-de-sac with Public Works Department on behalf of the Scotts. Eymann also submitted the plans and specifications for the construction of the cul-de-sac to the City on behalf of the Scotts. Although these plans show the public right-of-way adjacent to the cul-de-sac, the stone columns were not depicted on any of the plans or drawings submitted to the City during the construction process.

As the district court found, "no one ever indicated that the Columns would be built inside the right-of-way, nor were they identified on any plans submitted to the City's Public Works Department." At some point, a landscape architect prepared undated plans or drawings that show where the stone columns were to be placed. However, these drawings were also never submitted to the City of Leawood nor did the Scotts or their contractors ever amend the plans and specifications previously submitted to depict the projected placement of the stone columns in the public right-of-way of the cul-de-sac required by the City.

The parties spent a great deal of time and effort in their briefs—as well as during oral arguments—debating about various City of Leawood ordinances. On the one hand,

the City contends that the actual authority to decide what can and cannot be placed in a public right-of-way has been delegated by the City Council to the Public Works Director. On the other hand, the Scotts suggest that the delegation to the Public Works Director applies only to already existing public right of ways. Ultimately, although these arguments are thought-provoking, we need not decide them to resolve this appeal because the Scotts would still need to prove that the City Council delegated the actual authority to determine the use of a required public right-of-way to the Codes Administration Department in order to prevail on the claims asserted in their petition.

As discussed above, it is the governing body of a municipality that possess the authority—and the responsibility—to address public safety, general welfare, and economic concerns. This authority extends to the placement of reasonable restrictions on the use of a public right-of-way. Here, there is simply no evidence to support the Scotts' argument that the City Council explicitly delegated the actual authority to approve or disapprove the placement of objects in a public right-of-way to Bowen or any other employee of the Codes Administration Department.

Accordingly, we conclude that the Scotts have failed to establish that they are entitled to a declaratory judgment or other relief from the City of Leawood. We also conclude that the district court's findings of fact were based on substantial competent evidence contained in the record. Furthermore, we conclude that the district court appropriately interpreted the law in determining that Bowen did not have the actual authority to approve or disapprove the placement of the stone columns in the public right-of-way of the cul-de-sac required by the City of Leawood as part of this residential construction project. Finally, we conclude that the remedy ordered by the district court was reasonable.

For these reasons, we affirm the judgment of the district court, and we find it unnecessary for us to reach the other issues presented by the parties in their briefs.

Affirmed.