No. 48,572

CHARLES E. RAUH, *Appellant,* v. CITY OF HUTCHINSON, KANSAS, a Municipal Corporation, and TOM.CLARKSON, JOHN NEAL, JAMES MARTINEZ, JOHN NICKELSON and BERT ALUMBAUGH, City Commissioners, *Appellees,* and CARGILL, INC., *Intervenor-Appellee.*

(575 P 2d 517)

Opinion filed February 25, 1978.

*Ralph J. Thorne,* of Rauh, Thorne & Robinson, of Hutchinson, argued the cause and was on the brief for appellant.

*Robert J. Gilliland,* of Gilliland, Hayes & Goering, of Hutchinson, argued the cause, and *John F. Hayes* and *James R. Gilliland,* of the same firm, and *Charles K. Hyter,* of Hutchinson, were with him on the brief for appellees and intervenor-appellee.

The opinion of the court was delivered by

HOLMES, J.: This action was filed by plaintiff-appellant, Charles E. Rauh, to restrain the Hutchinson, Kansas, City Commission from taking action on two ordinances providing for the issuance of industrial revenue bonds to finance Cargill, Inc. in the im-

provement and expansion of the former Barton Salt Plant. In addition to the restraining order, plaintiff prayed for a determination whether the proposed ordinances were legislative or administrative in character and therefore within the purview of the initiative and referendum statute, K.S.A. 12-3013.

While the factual situation is relatively simple, the pleadings, procedural steps taken to date, record, arguments and contentions of the parties require a rather detailed résumé.

Originally, Cargill, Inc. was not a party to this action but, following the decision of the district court, was allowed to intervene for purposes of appeal. Sometime between 1971 and October, 1974, Cargill purchased the salt plant, which apparently was old and in need of extensive repairs and remodeling. In October, 1974, Cargill approached the city commission about issuing industrial revenue bonds to finance major plant improvements and expansion. On October 29, 1974, the commission adopted resolution #1637 in which it found that issuance of five million dollars of industrial revenue bonds would be in furtherance of the statutory purposes set forth in K.S.A. 12-1740 to 12-1749, inclusive, and would promote the welfare of the community. This resolution was not published as required under K.S.A. 12-3007 for an ordinance. No further action was taken by Cargill or the city to implement the issuance of the bonds until March, 1976, when Cargill announced plans to ask the city commission to approve the application for bonds. It appears to be undisputed that the delay by Cargill in requesting the city to proceed was due to an unfavorable bond market between the fall of 1974 and late winter, 1976. Plaintiff appeared at the next city commission meeting on March 30, 1976, protesting the use of industrial revenue bonds for Cargill. On April 13, 1976, plaintiff again appeared before the commission to advise that petitions, under the initiative and referendum statute (K.S.A. 12-3013), seeking the enactment of an ordinance declaring that no bonds be issued under resolution #1637, were being circulated to the electors of the city and would be filed with the city clerk. At the same meeting the city attorney advised the commission that inasmuch as the proposed ordinances to implement the issuance of bonds were administrative, the petitions were also administrative in nature and the ordinance proposed by the petitions would not be subject to the initiative and referendum statutes.

Cargill prepared two ordinances, #6519 and #6520, which were placed on first reading by the commission on May 25, 1976. These ordinances were designed to implement the issuance of the $5,000,000.00 in bonds as originally contemplated in the resolution of 1974. Following the first reading of the ordinances plaintiff filed an action in the district court and obtained a temporary restraining order preventing the city commission from acting further on the proposed ordinances. The matter was heard on the merits on June 8, 1976, at which time the court found in favor of the defendants. The court specifically found that the Cargill ordinances presented to the commission were administrative and not legislative and plaintiff's requested ordinance was not subject to K.S.A. 12-3013. Plaintiff failed to post the required bond to keep the restraining order in effect pending appeal and the commission proceeded with the issuance of the bonds. Plaintiff has taken this appeal from the orders and findings of the trial court.

Plaintiff raises a number of issues on appeal and the defendants and intervenor raise various defenses. The basic question before this court, however, is whether the action of the city commission in adopting ordinances #6519 and #6520 was legislative, which would submit the ordinance requested by petitioner to an election under K.S.A. 12-3013, or was it administrative, which, by the express terms of the statute, would exclude the requested ordinance from election.

The use of industrial revenue bonds by municipalities and other governmental bodies has been a relatively recent development, which has become increasingly popular since the early 1950s. Revenue bonds, as such, have long been utilized to promote the construction or expansion of public utilities, or other similar ventures, where the facility is publicly owned through the governmental entity and the primary purpose is one of public use and necessity. The use of revenue bonds for the purposes of furthering private enterprise is another matter.

The possibility that some procedure similar to industrial revenue bonds might someday be used to promote private enterprise in Kansas was foreseen over a century ago when, in 1874, Justice Miller, speaking for the United States Supreme Court, stated:

"If these municipal corporations, which are in fact subdivisions of the State, and which for many reasons are vested with quasi legislative powers, have a fund

or other property out of which they can pay the debts which they contract, without resort to taxation, it may be within the power of the Legislature of the State to authorize them to use it in aid of projects strictly private or personal, but which would in a secondary manner contribute to the public good; . . . ." *Savings and Loan Association v. Topeka,* 87 U.S. 455, 460, (20 Wall. 655, 659).

The distinguishing feature of all revenue bonds, whether for a municipally owned public purpose or for private enterprise, is that the bonds ordinarily are not a general financial obligation of the governmental body and its taxpayers, but are payable from the income or revenue generated by the particular facility. In Kansas, by statute, industrial revenue bonds and the interest thereon can never be paid as a general obligation of the city nor may they be payable in any manner by taxation. (K.S.A. 12-1743.)

The events speculated upon by Justice Miller in 1874 came to pass in 1961 when the Kansas Legislature, recognizing the potential of the use of industrial revenue bonds, passed a comprehensive act authorizing their use by cities. This act was in addition to existing revenue bond statutes. The provisions of the act are found in K.S.A. 12-1740 to 12-1749, inclusive, and amendments. The purpose of the act, as set forth in K.S.A. 12-1740, is:

"**Purpose of 12-1740 to 12-1749.** It is hereby declared that the purpose of this act shall be to promote, stimulate and develop the general economic welfare and prosperity of the state of Kansas through the promotion and advancement of physical and mental health, industrial, commercial, agricultural, natural resources and of recreational development in the state; to encourage and assist in the location of new business and industry in this state and the expansion of existing business and health development; and to promote the economic stability of the state by providing greater employment opportunities, diversification of industry and improved physical and mental health, thus promoting the general welfare of the citizens of this state by authorizing all cities of the state to issue revenue bonds, the proceeds of which shall be used only to purchase or construct, maintain and equip buildings and acquire sites therefor and to enlarge or remodel buildings and equip the same, for agricultural, commercial, hospital, industrial and manufacturing facilities and to enter into leases or lease-purchase agreements with any person, firm or corporation for said facilities."

K.S.A. 1977 Supp. 12-1741 provides that any city shall have power to issue revenue bonds for the purposes indicated in 12-1740 providing the governing body declares that the facility would promote the welfare of the city and further provides certain restrictions as to location of the proposed facilities. It also provides that the city shall have the power to enter into leases and

lease-purchase agreements for the facilities. K.S.A. 12-1742 sets forth details concerning such leases and lease-purchase agreements and for the disposition of any monies received by the city in lieu of taxes.

K.S.A. 12-1743 provides:

"Nothing in this act shall be so construed as to authorize or permit any city to make any contract or to incur any obligation of any kind or nature except such as shall be payable solely out of the rentals from such facilities. *Such cities may issue bonds payable solely and only from the revenues derived from such facilities.* Such bonds may be issued in such amounts as may be necessary to provide sufficient funds to pay all the costs of purchase or construction of such facility, including site, engineering and other expenses, together with interest.

"Bonds issued under the provisions of this act are declared to be negotiable instruments, shall be executed by the mayor and clerk of the city, and shall be sealed with the corporate seal of the city. *The principal and interest of said bonds shall be payable solely and only from the special fund herein provided for such payments, and said bonds shall not in any respect be a general obligation of such city, nor shall they be payable in any manner by taxation.* All details pertaining to the issuance of such bonds and the terms and conditions thereof shall be determined by ordinance of the city." (Emphasis added)

K.S.A. 12-1744 provides the city may pledge the facility and the net earnings therefrom to the payment of the bonds and provides for the establishment of a sinking fund. K.S.A. 1977 Supp. 12-1744a through d provide the procedure for issuance of the bonds, filing of notices and details with the Kansas securities commissioner, findings to be made by the commissioner, provisions for filing a certificate evidencing the issuance of the bonds and sanctions against the members of the governing body of the city in the event of failure to comply with the notice and filing requirements. K.S.A. 12-1745 sets certain limitations on the amount of bonds which may be issued. K.S.A. 12-1746 exempts the bonds and all income or interest therefrom from all state taxes except inheritance taxes. K.S.A. 12-1747 defines the term revenue bonds, provides again that they shall not be general obligations of the city, shall not contain the recitals set forth in K.S.A. 10-112 (under the general bond law) and sets forth specific recitals which shall be included. K.S.A. 12-1748 provides for the construction of the terms of the act. K.S.A. 12-1749 makes the act supplemental and cumulative to other existing laws. K.S.A. 1977 Supp. 12-1749a provides for refunding of any bonds issued under the act.

Following enactment of the original act in 1961, its constitutionality was challenged and upheld by this court in *State, ex rel.*

*v. City of Pittsburg,* 188 Kan. 612, 364 P.2d 71 (1961). Amendments which have been made to the act since 1961 are such that the discussion in *State, ex rel. v. City of Pittsburg,* supra, remains pertinent and for those interested in a detailed analysis of the constitutional aspects of the act, we would refer them to that opinion.

The initiative and referendum statute, K.S.A. 12-3013, provides a procedure whereby a city's electors may place legislative action of the city governing body before a vote of the people. The statute specifically exempts administrative ordinances from its operation.

With the foregoing rather verbose statement of the facts and background in this case, we turn to the issue at hand.

Were the original Cargill ordinances #6519 and #6520 legislative or administrative?

This court has recently set forth certain guidelines for determining whether an action is legislative or administrative in character in *City of Lawrence v. McArdle,* 214 Kan. 862, 522 P.2d 420 (1974). The first four paragraphs of the syllabus state:

"1. The operation of the initiative and referendum statute is to be confined with a considerable degree of strictness to measures which are quite clearly and fully legislative and not principally executive or administrative.

"2. One crucial test for determining that an ordinance is administrative or legislative is whether the ordinance is one making a new law or one executing a law already in existence. Permanency and generality of application are two additional key features of a legislative ordinance.

"3. Acts constituting a declaration of public purpose and making provisions for ways and means of its accomplishment may be generally classified as calling for the exercise of legislative power. Acts dealing with only a small segment of an overall policy question are generally of an administrative character.

"4. Decisions which require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of policy."

The distinction between legislative and administrative enactments is treated at some length in *5 McQuillin, Mun. Corp. (3rd Ed.)* § 16.55, pp. 211-214:

"§ 16.55—Legislative or administrative measures. The power of initiative or referendum usually is restricted to legislative ordinances, resolutions, or measures, and is not extended to executive or administrative action, although a city charter may dispense with this distinction. It has been said, however, that *if the subject is one of statewide concern in which the legislature has delegated decision-making power, not to the local electors, but to the local council or board as the*

*state's designated agent for local implementation of state policy, the action receives an 'administrative' characterization, hence is outside the scope of the initiative and referendum.*

"Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. In this connection an ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to the vote of the people.

"The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. *The power to be exercised* is legislative in its nature if it prescribes a new policy or plan; whereas, it *is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.* Similarly, an act or resolution constituting a declaration of public purpose and making provision for ways and means of its accomplishment is generally legislative as distinguished from an act or resolution which merely carries out the policy or purpose already declared by the legislative body." (Emphasis added)

The industrial revenue bond act is comprehensive and complete and sets forth the legislative policy and purposes in K.S.A. 12-1740. The balance of the act specifies the powers, restrictions and procedure to be utilized by the governing body of the city in exercising its administrative functions to carry out that policy. The act specifies no particular form in which the city shall make the necessary declaration that the proposed facility would promote the welfare of the city. The initial resolution and the subsequent ordinances enacted by the City of Hutchinson would appear to satisfy the statutory requirements to put the administrative procedure contemplated by the statutes into operation. K.S.A. 12-1743, which provides in part:

"All details pertaining to the issuance of such bonds and the terms and conditions thereof shall be determined by ordinance of the city"

grants the governing body of the city broad discretionary powers in the exercise of its administrative functions.

In *State, ex rel. v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 296 P.2d 656, there was a constitutional attack upon the urban renewal act which authorized cities to set up and carry out urban renewal projects. While not directly in point, one argument raised against the statute was that it constituted an unlawful delegation of legislative power. We stated at page 440:

"We think it clear that while the legislature cannot delegate its constitutional power to make a law, it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative. In other words, the legislature may enact general provisions but leave to those who are to act certain discretion in 'filling in the details,' so to speak, provided, of course, it fixes reasonable and definite standards which govern the exercise of such authority.   .   .   ."

In the case at bar the legislature has enacted the broad general provisions and policy and delegated to the city the administrative function of "filling in the details" under reasonable and definite standards as contained in the act itself.

If the legislature had intended that industrial revenue bonds under K.S.A. 12-1740, *et seq.,* be subject to initiative and referendum it could have included such provisions in the act. Voluminous legislation has done so. One has only to make a cursory examination of the various bond statutes now in existence to find that in many, if not most, instances legislation authorizing bonds either requires an election in the first instance or provides for one upon the filing of protest petitions. (See, for example, Municipal Airfields, K.S.A. 3-113, *et seq.;* County Airports, K.S.A. 3-301, *et seq.;* Industrial Development Bonds, K.S.A. 12-3801, *et seq.;* Public Utilities, K.S.A. 12-801, *et seq.;* General Improvements, K.S.A. 12-6a15; Libraries, K.S.A. 12-1221; Swimming Pools and Golf Courses, K.S.A. 13-13,101; ad infinitum.)

One may question the reasoning behind the legislature's action in not providing such procedures under K.S.A. 12-1740, *et seq.* However, a close examination of the statutes may provide an answer. The statutes themselves contain strong and binding safeguards for the public. *The obligations for payment of the bonds and interest thereon shall not in any respect be payable as a general obligation of the city nor shall they be payable in any manner from taxation. The bonds are payable solely and only from the revenues derived from the facilities financed.* (K.S.A. 12-1743)

42 Am. Jur. 2d, Initiative and Referendum, Sec. 12, states:

"Generally, an enactment originating a permanent law or laying down a rule of conduct or course of policy for the guidance of citizens or their officers or agents is purely legislative in character and referable, while an enactment which simply puts into execution previously declared policies or previously enacted laws is administrative or executive in character and not referable. *If an act carries out an existing policy of a legislative body, it is administrative whether the policy came*

*into existence in an enactment of the body itself, in the organic law creating the body, or in an enactment of a superior legislative body."* (Emphasis added)

An examination of the cases and legal authorities will disclose that the determination of whether a municipality has acted in its legislative or administrative capacity is indeed difficult and by no means consistent. Each case must be determined on its particular facts and even then there is no unanimity of opinion. Action based on one set of facts will be considered legislative in one jurisdiction while the same or similar action may be considered administrative in a different jurisdiction.

Considering the broad general policy and the comprehensive nature of the industrial revenue bond act and applying the criteria set forth in *City of Lawrence v. McArdle,* supra, we find that the acts of the governing body of the City of Hutchinson in the adoption of ordinances #6519 and #6520 were administrative in character and not subject to contest by election under K.S.A. 12-3013.

In view of the conclusion reached it is not necessary to consider the other points and contentions raised by the parties.

The judgment is affirmed.