No. 70,473

CITY OF WICHITA, KANSAS, *Appellee,* v. KANSAS TAXPAYERS
NETWORK, INC., and KARL PETERJOHN, *Appellants.*

(874 P.2d 667)

Opinion filed May 27, 1994.

*Robert G. Frey,* of Wichita, argued the cause and was on the brief for appellants.

*Douglas J. Moshier,* senior city attorney, argued the cause, and *Gary E. Rebenstorf,* city attorney, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The City of Wichita (City) enacted Charter Ordinance 147 under its home rule powers. The Charter Ordinance exempted the City from the provisions of the Kansas Water Pollution Act, K.S.A. 12-3101 *et seq.* Based upon Charter Ordinance 147, the City adopted Ordinance 41-948, which established a storm water utility system for the City. Kansas Taxpayers Network, Inc., and Karl Peterjohn (Taxpayers) through initiative and referendum authority of K.S.A. 12-3013 attempted to repeal Ordinance 41-948. Ultimately, in response to a declaratory judgment action filed by the City, the trial court ruled that (1) Ordinance 41-948 was administrative in nature and therefore outside the scope of the initiative processes of K.S.A. 12-3013 and (2) the enactment of Charter Ordinance 147 was a proper exercise of the City's home rule powers. These two conclusions have been preserved by the Taxpayers as the questions to be resolved on appeal.

The Kansas Water Pollution Act addresses the powers of municipalities with respect to the development, maintenance, and operation of sewer systems. The City adopted Charter Ordinance 147, which modified and supplemented the provisions of the Kansas Water Pollution Act in several respects. The Charter Ordinance provides that it is:

"A charter ordinance exempting the City of Wichita, Kansas from the provisions of the Water Pollution Act, K.S.A. 12-3101 through K.S.A. 12-3107, and providing substitute and additional provisions relating to the establishment, operation and maintenance of sewer systems and to the issuance of bonds for the purpose of paying for the grounds and improvements necessary for the operation of such systems; and repealing charter ordinance No. 145 of the City of Wichita."

Charter Ordinance 147 expanded the definition of "sewer" and "sewer system"; it set out the authority to establish sewer service charges. It exempted the City from the requirement that the is-

suance of bonds be subject to a vote of the electors, and it authorized the issuance of general obligation bonds of the City to finance all or any portion of the sewer system improvements. In addition, it provided authority for the City to combine its water, sanitary sewer, and storm water utilities and to initiate a consolidated billing system for all its utilities.

The ordinance was adopted on December 22, 1992, and was published in accord with statute two times. Within the 60 days following publication, the City received no petition requiring that a referendum be held on Charter Ordinance 147, which became effective on March 1, 1993.

On February 23, 1993, the City adopted Ordinance 41-948. This ordinance created a storm water utility for the City of Wichita. In § 2 (§ 16.30.020 of the Code of the City of Wichita, Kansas), the storm water utility is specifically created under the authority set out in the Kansas Water Pollution Act, as modified by Charter Ordinance 147. In March 1993, the City began charging each parcel of land within the City a drainage fee related to the contribution such land makes to the surface waters that must be drained through the City's storm water management system.

### Home Rule Power to Adopt Charter Ordinance

The Taxpayers contend that the City exceeded its home rule authority in enacting the Charter Ordinance and that both the Charter Ordinance and Ordinance 41-948 are invalid. The City contends that enactment of Charter Ordinance 147 was within its home rule authority because the Kansas Water Pollution Act is not uniformly applicable to all cities.

The City's home rule authority is set forth in Article 12, § 5 of the Kansas Constitution, which provides in pertinent part:

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class . . . . Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature

applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. . . .

"(c) (1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city."

The Taxpayers contend that the City exceeded its home rule authority essentially for three reasons. First, they argue that the Kansas Water Pollution Act is uniformly applicable to all cities, and that Article 12, § 5 (c)(1) therefore does not permit the City to exempt itself from the Kansas Water Pollution Act's provisions.

The City responds that the Kansas Water Pollution Act is not uniformly applicable to all cities because one provision of K.S.A. 12-3105 applies only to certain cities of the first class. One portion of K.S.A. 12-3105 provides that certain cities of the first class may bill and collect charges through the administrative departments of the board of public utilities and that the board may discontinue service to nonpaying customers. This court's decision in *City of Junction City v. Griffin*, 227 Kan. 332, 607 P.2d 459 (1980), supports the City's position. In *Griffin*, we held that the Kansas Code of Procedure for Municipal Courts, K.S.A. 12-4105, was not uniformly applicable to all cities because one section applied only to cities of the first class. 227 Kan. at 335 (In cities of the first class, the person selected as municipal judge "shall be an attorney admitted to the practice of law in the state of Kansas.").

The Taxpayers' second contention is that because this case concerns a fee, Article 12, § 5(b) of the constitution limits the City's home rule authority. That section provides that home rule authority is subject to legislative enactments "applicable uniformly to all cities *of the same class* limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction." (Emphasis supplied.) In support of their contention, the Taxpayers refer to the language in § 3105 of the Kansas Water Pollution Act applicable to certain cities of the first class (on which the City relied to contend the Kansas Water Pollution Act was not uniformly applicable). The Act's special provision for certain cities of the first

class, however, does not bring the provision within the home rule limitation in Article 12, § 5(b) for two reasons. First, it does not apply uniformly to all cities of the first class but only to those "now owning or hereafter acquiring a municipal water plant and a municipal light plant, which plants are now or hereafter operated, managed and controlled by a board of public utilities." K.S.A. 12-3105. Second, 12-3105 does not really limit or prohibit the levying of any tax or fee. Rather, it extends some additional authority to the cities to which it applies—it allows them to bill and collect sewer service charges through the board of public utilities and authorizes the board to discontinue service to non-paying customers.

Finally, the Taxpayers contend that the Charter Ordinance exceeded the City's home rule authority because Article 12, §§ 5(b) and 5(c)(1) of the constitution limit the City's authority to "opt out of" or modify legislative provisions that prescribe limits of indebtedness regardless of whether they are uniformly applicable to all cities. The Kansas Water Pollution Act, however, specifically provides that any bonds issued under it "shall not constitute an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction, and shall not be subject to the provisions of any other law relating to the authorization, issuance or sale of bonds." K.S.A. 12-3106(b). Moreover, the Kansas Water Pollution Act does not specifically impose a limit on indebtedness, other than its requirement that any bonds must be authorized by a majority vote. K.S.A. 12-3106.

Given the nature of the Kansas Water Pollution Act, the provisions of Article 12, §§ (5)(b) and (5)(c)(1) of our state constitution, and this court's opinion in *Griffin*, we hold that the City did not exceed its home rule authority in enacting Charter Ordinance 147.

### Whether Ordinance 41-948 Was Administrative

The Taxpayers also contend that the trial court erred in concluding that the ordinance proposed by the Taxpayers was administrative and therefore outside the scope of the initiative and referendum process. This case came before the district court after the Taxpayers sought to repeal Ordinance 41-948 by initiative pur-

suant to K.S.A. 12-3013. K.S.A. 12-3013 permits the electors to submit a proposed ordinance to a city's governing body by petition signed by a particular percentage of the electors, depending on the class of the city. The citizen initiative provisions, however, do not apply to:

"(1) Administrative ordinances;
(2) ordinances relating to a public improvement to be paid wholly or in part by the levy of special assessments; or
(3) ordinances subject to referendum or election under another statute." K.S.A. 12-3013(e).

Both parties agree that in determining whether a repealing ordinance is administrative or legislative, this court should look to the ordinance that the electors seek to repeal. We agree. See, e.g., *Lewis v. City of South Hutchinson*, 162 Kan. 104, 125, 174 P.2d 51 (1946). ("Obviously, the original ordinance . . . was legislative in character. Consequently, the proposed repealing ordinance was also legislative in character."). In this case, then, we must look to the character of Ordinance 41-948 in determining whether the repealing ordinance is administrative or legislative in nature.

The determination of whether an ordinance is legislative or administrative "is to be based upon the factual situation in each case." *Rauh v. City of Hutchinson*, 223 Kan. 514, Syl. ¶ 3, 575 P.2d 517 (1978). Both parties and this court agree that the guidelines for determining whether an ordinance is administrative or legislative are set forth in *City of Lawrence v. McArdle*, 214 Kan. 862, Syl. ¶¶ 2-4, 522 P.2d 420 (1974). See *Rauh*, 223 Kan. 514, Syl.¶ 5, 519. These guidelines are summarized below:

1. An ordinance that makes new law is legislative; while an ordinance that executes an existing law is administrative. Permanency and generality are key features of a legislative ordinance. *McArdle*, 214 Kan. 862, Syl. ¶ 2.

2. Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal with a small segment of an overall policy question generally are administrative. *McArdle*, 214 Kan. 862, Syl. ¶ 3.

3. "Decisions which require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of a policy." *McArdle*, 214 Kan. 862, Syl. ¶ 4.

4. No one act of a governing body is likely to be solely administrative or legislative, and the operation of the initiative and referendum statute is restricted "to measures which are quite clearly and fully legislative and not principally executive or administrative." *McArdle*, 214 Kan. 862, Syl. ¶ 1.

The court in *Rauh* also quoted at length from McQuillin's treatise on Municipal Corporations, which iterated many of the same guidelines this court announced in *McArdle*. McQuillin also noted that when the matter at issue is one of statewide concern and the legislature delegates decision-making power to local councils or boards, rather than local electors, the action is an administrative function. *Rauh*, 223 Kan. at 519-20 (quoting 5 McQuillin, Mun. Corp. § 16.55, pp. 211-14 [3d ed.]).

Although the parties applied the same test to the ordinance at issue here, they reached different conclusions about the character of the ordinance. Applying the *McArdle* and *Rauh* analysis to the facts of this case, we conclude that the ordinance is administrative in character and thus is outside the scope of the initiative statute.

The ordinance does not make new law but executes an existing law. Charter Ordinance 147 is in the nature of an enabling law providing the basis for the specific action contemplated by Ordinance 41-948. The Charter Ordinance gives the City all the powers necessary or convenient to, *inter alia*, develop and maintain a sewer system, which is defined to include storm sewers. See Charter Ordinance 147, §§ 2, 3. The powers include, but are not limited to, the power to adopt ordinances and impose service charges. Charter Ordinance 147, § 3(a). Ordinance 41-948 includes the specific provisions to establish, operate, and fund a storm water utility and is well within the authority granted by Charter Ordinance 147. Ordinance 41-948 also expressly recites

that it was adopted in response to state and federal storm water management requirements.

The Taxpayers contend that the City's "whereas" clauses in Ordinance 41-948 amount to a declaration of public purpose and that the specific provisions are the ways and means to accomplish that purpose, rendering the enactment legislative in character. The "policies" announced in the "whereas" clauses, however, are not new policies announced for the first time by the City. The clauses announce that the City is enacting the ordinance to comply with Federal Water Pollution Control Act requirements, state storm water management requirements, and its responsibility to maintain and expand the storm water system it already owns and operates.

Finally, the operation, management, and financing of a city-wide storm water management system reasonably fits within the context of decisions that require specialized knowledge and experience with respect to city management. The physical structure of the system, maintenance, and fee assessment and collection all fit within the purview of the City's expertise. The City already owns and maintains the existing system; Ordinance 41-948 also fits within a city's expertise in terms of fiscal management.

Accordingly, we hold that Ordinance 41-948 is administrative and that the repealing ordinance proposed by the Taxpayers thus also is administrative, beyond the scope of the initiative powers granted by K.S.A. 12-3013.

Affirmed.