No. 123,485

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA,
*Appellee/Cross-appellant*,

v.

KARL PETERJOHN and CELESTE RACETTE,
INDIVIDUALLY AND AS REPRESENTATIVES OF
"SAVE CENTURY II COMMITTEE,"
*Appellants/Cross-appellees*.


SYLLABUS BY THE COURT


1.

An initiative petition is effective when it substantially complies with all relevant statutory safeguards. This means that petitioners must comply with the essential matters necessary to assure every reasonable objective of the statutes has been met.


2.

An initiative petition can only be used to advance policies that are legislative in nature, not for policies that are predominantly executive or administrative.


3.

Ordinances tend to be administrative in nature when they require particularized knowledge in matters of city operations, associated space requirements, public safety, and regulatory issues, as well as an intimate appreciation of the city's fiscal affairs.


Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed December 30, 2022. Affirmed.

*Austin Keith Parker*, of Parker & Parker, LLC, of Wichita, for appellants/cross-appellees.

*Sharon L. Dickgrafe*, chief deputy city attorney, for appellee/cross-appellant.

Before MALONE, P.J., ATCHESON and WARNER, JJ.

WARNER, J.: Kansas law allows city residents of Kansas cities to directly impact city policy through the initiative-and-referendum process. When a certain percentage of the voters in a city sign a petition to adopt a proposed ordinance under this procedure, the city council must either pass the proposed law or submit it for the voters' consideration in an election.

Initiative petitions thus provide a powerful tool for city residents to alter a city's *legislative* policies. But the initiative process cannot be used to address *administrative* matters, which require specialized knowledge of the city's financial constraints and expertise as to how day-to-day operations are carried out. And initiatives must comply with various procedural safeguards to ensure that the petitioners, city government, and electorate understand the specific policy advanced.

This case involves an ordinance proposed by a group of Wichita residents through the initiative process to prevent the sale, demolition, or redevelopment of the Century II performing arts center and former Wichita public library. The proposed ordinance would require the City of Wichita to hold an election whenever it sought to destroy, replace, or adversely affect prominent buildings owned by the City that are historically important or architecturally significant. After the residents filed their petition and proposed ordinance, the City sued, seeking a declaration that the ordinance concerned administrative matters that could not be raised via the initiative process. The district court agreed and entered judgment in the City's favor. After carefully considering the parties' arguments in light of the governing law, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to our discussion are generally undisputed. In the 1960s, the City of Wichita built a new performing arts center and a public library near the banks of the Arkansas River. The arts center, named Century II to honor the 100th anniversary of Wichita's incorporation, has served as a performance venue for organizations such as the Wichita Symphony Orchestra, the Wichita Youth Symphony, and Music Theatre Wichita. Though the library has since moved to a new location, Century II continues to host concerts, theatrical performances, and other events.

In late 2019, defendant Celeste Racette learned of five proposals by the Riverfront Legacy Master Plan Coalition—a partnership between various public and private groups—to redevelop the land where Century II and the former library sit. Four of these proposals involved demolition of Century II and the former library. This information led Racette to join the Save Century II Committee with the goal of preserving these two buildings. Racette and defendant Karl Peterjohn subsequently helped the Committee organize the "Save Century II" campaign with the same aim.

Part of the "Save Century II" campaign involved the advancement of the initiative petition that is the subject of this lawsuit. Peterjohn submitted the campaign's petition to the Sedgwick County Counselor in January 2020. The petition included the following language and proposed ordinance:

"Shall the following ordinance become effective:

"BE IT ORDAINED THAT THE GOVERNING BODY OF THE CITY OF WICHITA, KANSAS:

"No prominent city owned buildings of historical importance or architectural significance (regardless of historic register status), including Century II and the adjoining former Public Library, shall be demolished, replaced or otherwise adversely affected without a

public vote of approval by the qualified voters in the City of Wichita, and further, no interest in such city owned buildings, including Century II and the adjoining former Public Library, shall be leased, sold, bartered, traded, conveyed or assigned and thereafter demolished, replaced or otherwise adversely affected without a public vote of approval by the qualified voters in the City of Wichita."

The County Counselor approved the form of this proposed ordinance, and Save Century II organizers went on to obtain over 17,000 voter signatures supporting the petition—more than 34% of the number of electors who voted in the 2019 municipal election. The organizers filed the petition, signatures, and proposed ordinance with the Wichita city clerk in July 2020. The Sedgwick County Election Commissioner reviewed and verified the signatures, and the proposed ordinance was presented to the city council.

Later that month, the City sought a declaratory judgment against Racette and Peterjohn (as organizers of Save Century II) to determine whether the City was required to present the proposed ordinance to Wichita voters in a special election. The City argued that the initiative petition failed to comply with various statutory requirements and that the proposed ordinance was administrative in nature and thus not appropriate for a citizen initiative. The City also asserted that the proposed ordinance was void because it exceeded the City's constitutional authority by requiring the City to call future binding elections not otherwise permitted by Kansas law. And the City asserted that the language of the ordinance was unconstitutionally vague because it did not give sufficient direction as to what actions the City must take to carry out the proposed law.

As the City's lawsuit proceeded, the Wichita City Council adopted a new policy in response to Save Century II's efforts. The City's policy acknowledged the thousands of signatures on the initiative petition but stated that the City lacked the statutory authority to call binding elections on its own initiative. Nevertheless, the policy announced that the City would hold an advisory election before tearing down either Century II or the former public library.

4

The district court held an evidentiary hearing a few days after the City's policy announcement. There, Wichita's Interim Assistant Director for Public Works and Utilities testified about how the City makes its decisions regarding building maintenance, renovation, and demolition. He also explained that the City owns about 540 buildings, about 60% of which are at least 40 years old. Racette also testified about Save Century II's motivations for proposing the ordinance and the group's intention that the ordinance's scope should not be limited to buildings on the historical registry.

The district court later announced its ruling in a 38-page decision. The court found the initiative petition substantially complied with the governing statutory procedures. But the court concluded that the proposed ordinance was predominantly administrative in nature and thus could not be adopted by initiative. The court also found that the ordinance would exceed the City's constitutional authority by requiring it to hold future binding elections. Finally, the court found that the terms "historically important or architecturally significant" and "adversely affected" rendered the ordinance unconstitutionally vague. The district court thus entered a declaratory judgment for the City, finding the proposed ordinance did not need to be adopted by the city council or set for an election.

The Save Century II organizers now appeal the district court's judgment. The City has cross-appealed the district court's procedural ruling that the initiative petition substantially complied with Kansas law.

DISCUSSION

In general, a city's power to adopt and amend its legislative policies rests with its city council. Council members consider and vote on "various ordinances, resolutions, and motions that the issues of the day" present. *City of Topeka v. Imming*, 51 Kan. App. 2d 247, 252, 344 P.3d 957, *rev. denied* 302 Kan. 1008 (2015). While members of the public

may participate in public debate and open meetings, their role in the development and advancement of policy is indirect—they ultimately rely on the judgment of the city's elected representatives.

The Kansas Initiative and Referendum statute, K.S.A. 12-3013, establishes a powerful procedure by which residents may more directly influence legislative decisions by petitioning the city government to adopt new policies or repeal existing ones. Under the initiative process relevant to this appeal:

- Citizens seeking to initiate a new policy must present voters with the language of a proposed ordinance and gather a minimum number of signatures, determined by the size of the municipality and the number of voters who participated in the last city election. K.S.A. 12-3013(a).

- Once these signatures have been collected, the proposed ordinance and petition are filed with the city clerk so the signatures on the petition may be verified. K.S.A. 12-3013(a).

- If enough voters have signed the petition, the proposed ordinance must be either adopted outright by the city council or presented to the voters in a special election. K.S.A. 12-3013(a).

- Once an ordinance has been formally adopted through the initiative procedure, it can only be altered by a public vote or, if at least 10 years have passed since its adoption, by the city council. K.S.A. 12-3013(c).

Given the power and lasting effect of an initiative petition—compelling the adoption of a policy by some percentage of previous voters, but potentially less than the voting majority who elected the city council members—Kansas law imposes various

6

procedural safeguards to ensure "the validity of the proponents' support." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 664, 367 P.3d 282 (2016). For example, the initiative petition must be accompanied by the specific language of the proposed ordinance so those signing the petition "have the opportunity to become fully aware of the exact, unalterable ordinance being proposed to become the law of their city." 303 Kan. at 663. And like other petitions seeking elections, an initiative petition must "pertain[] to a single issue or proposition." K.S.A. 25-3602(a). Petitions that fail to comply with these requirements are "null and void" and do not trigger any further action by the city council. 303 Kan. at 668.

Kansas law also restricts the types of issues that may be pursued through the initiative process. Initiative petitions may not be used to adopt "[a]dministrative ordinances," K.S.A. 12-3013(e)(1), which require "particularized knowledge" in matters of city "operations, associated space requirements, public safety, [and] regulatory issues, as well as an intimate appreciation of the [c]ity's fiscal affairs." *McAlister v. City of Fairway*, 289 Kan. 391, 408, 212 P.3d 184 (2009).

The parties' arguments in this appeal concern both these procedural and subject-matter limitations. Save Century II argues that the district court erred when it found that their proposed ordinance was administrative in nature, and thus inappropriate for the initiative process; it also challenges the court's constitutional rulings that the proposed ordinance was vague and exceeded the City's authority to conduct elections. In its cross-appeal, the City argues that the district court never should have reached the substance of the proposed ordinance, as the initiative petition did not strictly comply with the procedural safeguards in K.S.A. 12-3013, K.S.A. 25-3601, and K.S.A. 25-3602.

Because the City's cross-appeal presents a threshold challenge to the validity of the initiative petition, we consider those procedural claims first. We then turn to the parties' arguments regarding the language and scope of the proposed ordinance.

7

1. *The form of the initiative petition substantially complied with Kansas law.*

As we have indicated, K.S.A. 12-3013 allows city residents to initiate the adoption of a proposed city ordinance by collecting the required minimum number of signatures on a petition. See K.S.A. 12-3013(a); *McAlister*, 289 Kan. 391, Syl. ¶ 3. Initiative petitions must comply with the procedural safeguards in K.S.A. 12-3013(a), as well as other requirements in K.S.A. 25-3601 and K.S.A. 25-3602, which establish standards for all petitions requesting elections.

Under these statutes, an initiative petition "shall contain a request that the governing body pass the ordinance or submit the same to a vote of the electors." K.S.A. 12-3013(a). A petition may only concern a single issue. K.S.A. 25-3602(a). And if a petition requests an election on or protests an adopted ordinance or resolution, it is presumptively valid if it includes "the title, number and exact language of the ordinance, or resolution." K.S.A. 25-3601(c).

The City argues that an initiative petition is void if it does not strictly comply with each of these requirements. The district court concluded—and we agree—that Kansas law only required the organizers to substantially comply with these provisions.

As a starting point, we have previously observed that courts should exercise "'extreme caution'" when rejecting citizens' initiative or referendum petitions on mere technicalities. *City of Prairie Village v. Morrison*, No. 104,918, 2011 WL 6310196, at *7 (Kan. App. 2011) (unpublished opinion) (quoting 5 McQuillin, Municipal Corporations § 16.67, p. 481 [3d ed. rev. 2004]), *rev. denied* 296 Kan. 1129 (2013). In keeping with this principle, Kansas courts have long found that an initiative petition is effective when it substantially complies with all relevant statutory safeguards. See *State v. Jacobs*, 135 Kan. 513, 516-17, 11 P.2d 739 (1932) (finding substantial compliance when referendum

8

petition was left with city clerk instead of board of commissioners); see also *Morrison*, 2011 WL 6310196, at \*8 (statement asking whether ordinance should "'become effective'" instead of "'take effect'" substantially complied with Home Rule Amendment). This means that organizers presenting an initiative petition must comply with "the essential matters necessary to assure every reasonable objective of the statute[s]" has been met. *Stueckemann v. City of Basehor*, 301 Kan. 718, Syl. ¶ 1, 348 P.3d 526 (2015).

The City correctly points out that the Kansas Supreme Court has previously rejected an initiative petition because it did not comply with the requirements of K.S.A. 12-3013(a). See *State ex rel. Schmidt*, 303 Kan. at 667-68. The court in that case assumed that substantial compliance was the correct standard—and the City of Wichita agreed. See 303 Kan. at 667. The petitioners in that case, however, failed to attach a copy of the proposed ordinance with the initiative petition when it was filed with the city. The Supreme Court found that, without including the ordinance, the initiative petition there did not even substantially "comply with the statutory provision that the proposed ordinance be filed with the city clerk." 303 Kan. at 668.

The technical variations the City points to here are a far cry from the defect discussed in *State ex rel. Schmidt*. The City argues that Save Century II's initiative petition fell short of the statutory requirements in four ways:

- The petition did not include the "title" and "number" of the proposed ordinance. See K.S.A. 25-3601(c).

- The petition preceded the language of the proposed ordinance with, "Shall the following ordinance become effective" rather than, "'Shall the following be adopted?'" See K.S.A. 12-3013(b).

9

- The petition did not specifically request the Wichita City Council to pass the proposed ordinance or submit the ordinance in an election. See K.S.A. 12-3013(a).

- The petition contemplated a new election each time the City sought to change the character of a historically significant building and thus did not, according to the City, involve a single issue as required by K.S.A. 25-3602(a).

As the district court noted, these discrepancies—to the extent they vary at all from the statutory requirements—do not invalidate Save Century II's initiative petition.

To begin, the district court correctly observed that petitions only need to include the title and number references when the petitioners are "requesting an election on or protesting an ordinance, or resolution, adopted by the . . . city." K.S.A. 25-3601(c). In other words, this information must be included when a petition seeks to amend or rescind *existing* ordinances, but not when it seeks to adopt a *new* ordinance. Indeed, a proposed ordinance has not been adopted or codified; it does not have an official title or number to reference.

The City's attempt to distinguish requests that a proposed ordinance should "become effective" or "be adopted" is similarly unavailing. These phrases are found in K.S.A. 25-3601(c) and K.S.A. 12-3013(b), but neither provision applies here. K.S.A. 25-3601(c) requires a petition protesting an existing ordinance to ask: "'Shall the following ordinance, or resolution, become effective?'" As we have indicated, this provision does not apply for initiative petitions proposing a new ordinance. K.S.A. 12-3013(b) provides language that must be included on a ballot when a proposed ordinance is submitted to the voters in an election, requiring the proposed ordinance to be preceded on the ballot by the question, "'Shall the following be adopted?'" K.S.A. 12-3013(b). In contrast, K.S.A. 12-3013 does not require this specific language in an initiative petition.

10

In fact, K.S.A. 12-3013(a) does not direct that any specific wording must be used when circulating an initiative petition and the accompanying proposed ordinance. Instead, that statute merely requires the petition to "contain a request that the governing body pass the ordinance or submit the same to a vote of the electors." K.S.A. 12-3013(a). The City asserts that Save Century II's initiative petition did not include such a request. But we disagree.

The heading on Save Century II's initiative petition stated: "PETITION TO THE GOVERNING BODY OF THE CITY OF WICHITA, KANSAS." Directly before the text of the proposed ordinance, the petition said: "BE IT ORDAINED THAT THE GOVERNING BODY OF THE CITY OF WICHITA, KANSAS." While this language could have more clearly articulated the specific actions the organizers were asking the City to take, there is no question that the City understood what the organizers were requesting. The district court correctly found that this language substantially complied with K.S.A. 12-3013.

Finally, the initiative petition substantially complied with K.S.A. 25-3602(a)'s requirement that petitions "pertain[] to a single issue or proposition." The City correctly points out that Save Century II's proposed ordinance would require an election whenever the City sought to renovate, demolish, or take other actions concerning a historically important or architecturally significant building. But the focus of K.S.A. 25-3602(a) is the *petition*, not the ordinance. Here, the initiative petition proposed a single new ordinance for adoption and complied with K.S.A. 25-3602(a).

In sum, the initiative petition here complied with "the essential matters necessary to assure every reasonable objective of" K.S.A. 12-3013, K.S.A. 25-3601, and K.S.A. 25-3602. *Stueckemann*, 301 Kan. 718, Syl. ¶ 1. The district court did not err when it found that Save Century II's initiative petition substantially complied with these statutes.

11

2. *The proposed ordinance's aims may not be pursued through the initiative process.*

Because Save Century II's petition substantially complied with the statutes governing the initiative process, we turn to the ordinance proposed for adoption:

> "No prominent city owned buildings of historical importance or architectural significance (regardless of historic register status), including Century II and the adjoining former Public Library, shall be demolished, replaced or otherwise adversely affected without a public vote of approval by the qualified voters in the City of Wichita, and further, no interest in such city owned buildings, including Century II and the adjoining former Public Library, shall be leased, sold, bartered, traded, conveyed or assigned and thereafter demolished, replaced or otherwise adversely affected without a public vote of approval by the qualified voters in the City of Wichita."

The district court found that this proposed ordinance could not be adopted through initiative process for three reasons. *First*, the ordinance was administrative and thus could not be proposed for adoption under K.S.A. 12-3013(e). *Second*, adopting the ordinance would exceed the City's constitutional authority, as the legislature had not authorized the City to call future binding elections on its own initiative. And *third*, the language of the ordinance was unconstitutionally vague because it did not define "buildings of historical importance or architectural significance" or what actions would "adversely affect" those buildings. The organizers challenge each of these rulings on appeal.

After carefully reviewing the language of the proposed ordinance and the governing Kansas law, we agree with the district court that the ordinance is administrative and thus may not be adopted via an initiative petition under K.S.A. 12-3013. In light of this conclusion, we need not reach the district court's alternative constitutional rulings. See *State ex rel. Schmidt*, 303 Kan. at 658 (instructing that appellate courts should generally avoid making unnecessary constitutional decisions when the judgment can be assessed on other grounds). We therefore affirm the district court's judgment in favor of the City.

12

2.1.   *The proposed ordinance is administrative and thus cannot be adopted via a citizen initiative under K.S.A. 12-3013.*

As we have indicated, K.S.A. 12-3013(e)(1) excludes administrative ordinances from the initiative-and-referendum process. Kansas courts have interpreted this provision to signify that an initiative petition can only be used to advance policies that are "legislative" in nature, not for policies that are "principally executive or administrative." *City of Lawrence v. McArdle*, 214 Kan. 862, Syl. ¶ 1, 522 P.2d 420 (1974). This does not mean, however, that an ordinance can only be adopted through the initiative process if it involves purely legislative acts. Indeed, "no single act of a governing body is ever likely to be solely legislative or solely administrative." *McAlister*, 289 Kan. at 402. Instead, the question is whether an ordinance is *principally*—or *predominantly*—legislative.

The *McAlister* court articulated four often-overlapping considerations Kansas courts have historically employed to determine whether an ordinance is predominantly legislative or administrative:

1. "An ordinance that makes new law is legislative; while an ordinance that executes an existing law is administrative. Permanency and generality are key features of a legislative ordinance." 289 Kan. at 403.

2. "Acts declaring a public purpose and providing ways to accomplish that purpose may be generally classified as legislative. Acts dealing only with a small segment of an overall policy question are generally administrative in character." 289 Kan. 391, Syl. ¶ 8.

3. "Decisions requiring specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative in character, even

13

though they may also be said to involve the establishment of policy." 289 Kan. 391, Syl. ¶ 9.

4. "When the matter at issue in a proposed ordinance under the initiative and referendum statute is one of statewide concern and the legislature delegates decision-making power to local councils or boards rather than local electors, the city's action is administrative in character." 289 Kan. 391, Syl. ¶ 10.

The weight afforded to each of these considerations differs from case to case. In some instances, one consideration will sufficiently elucidate whether a proposed ordinance is predominantly administrative or legislative. 289 Kan. 391, Syl. ¶ 11. Because, where the facts are not in dispute, the characterization of an ordinance as administrative or legislative is a legal question, we conduct our analysis of these considerations de novo. See 289 Kan. at 399.

The district court analyzed the ordinance proposed by Save Century II's petition under each of the *McAlister* considerations and found it was predominantly administrative. The court noted that the ordinance would create a new law, requiring an election whenever certain city-owned buildings will be demolished, replaced, or adversely affected, and that this new policy tended to indicate a legislative purpose. But the court also noted that this policy change would only affect a small segment of the approximately 540 city-owned buildings, which was more consistent with an administrative policy. Turning to the third consideration, the court found—based on the testimony provided regarding building maintenance and the City's financial considerations—that the decision to demolish a building requires specialized training and knowledge beyond what is available to the general public. And the court lastly found that the manner in which cities hold elections is a question of statewide concern; requiring an election whenever the City sought to take action on one of the covered buildings would,

at the very least, distinguish Wichita from all other municipalities in Kansas in the manner in which they held elections.

Our analysis of these considerations differs from the district court's assessment. But we ultimately arrive at the same end—that the proposed ordinance is principally administrative and thus not a proper subject for an initiative petition. While it is not necessary in every case, we explain our analysis of the *McAlister* considerations in some detail to provide guidance as to how we reach this conclusion.

The first *McAlister* consideration—whether the proposed ordinance would establish a "new law"—provides little guidance as to the character of the proposed ordinance in this case. 289 Kan. at 403. As the district court observed, if the proposed ordinance were adopted, it would technically result in a new law. But that is true of any ordinance proposed through the initiative process and thus provides little guidance as to whether the substance of the ordinance is administrative or legislative. The controlling question is not whether the ordinance would create a new law in the technical sense, but whether the ordinance would create a new legislative *policy*.

The Kansas Supreme Court's decision in *Lewis v. City of South Hutchinson*, 162 Kan. 104, 174 P.2d 51 (1946), illustrates this distinction. In that case, the voters in South Hutchinson had approved a municipal water system in a previous election. Some residents later circulated an initiative petition that sought to limit the city's authority to proceed until the water system's plans were made available for public inspection and the construction could proceed without interruption. The *Lewis* court found that the proposed ordinance was administrative because it would merely alter an existing policy—that is, it would "'execut[e] a law already in existence.'" 162 Kan. at 128.

Applying these principles here yields mixed results. The City correctly points out that Wichita, like other cities, has already adopted a policy of historic preservation. The

15

City argues that the proposed ordinance merely seeks to alter these existing policies. This is true to a point. But the proposed ordinance seeks to permanently expand these preservation principles and develop protections for other public buildings deemed historically important or architecturally significant. It also adds a voter-approval requirement before the City may demolish or otherwise adversely affect one of these properties. On the whole, we do not find that this consideration provides any significant insight as to whether the proposed ordinance is predominantly legislative or administrative.

The second *McAlister* consideration—the ordinance's scope and purpose—is similarly ambivalent. The proposed ordinance suggests a public purpose: that voters should have a say when historically important or architecturally significant buildings owned by the City are to be destroyed or otherwise adversely affected. And it contains a means to accomplish that goal by a public vote. These broad public policy considerations sometimes demonstrate a legislative character. But the ordinance's reach is limited—it affects buildings that are prominent, city-owned, and either historically important or architecturally significant. It is unclear how many of the city's approximately 540 buildings meet those criteria. But the district court found that the number of buildings affected would be small, and the organizers themselves freely admitted that their focus was on the Century II performing arts center and the former public library. Because the ordinance would affect only a limited number of buildings, the ordinance also bears administrative characteristics. Again, this consideration does not lead us to conclude the proposed ordinance is either predominantly administrative or legislative.

Our analysis of the third *McAlister* consideration—whether the ordinance requires particularized knowledge or financial acumen—is more fruitful. The district court found that decisions regarding the acquisition, maintenance, and demolition of city-owned buildings required municipal experience and appreciation for the City's various financial obligations. Because the proposed ordinance intruded on this realm, the district court

16

found that it was predominantly administrative. Our review of the record leads us to the same conclusion.

At the hearing before the district court, Benjamin Nelson, the City's Interim Assistant Public Works Director, testified about the various factors the City must consider when making decisions about the maintenance, renovation, and demolition of city-owned buildings. Nelson explained that a decision to demolish or renovate a building is based primarily on the building's condition and utility—weighing the building's maintenance needs and its ability to accommodate future city programming. These assessments require an understanding of, among other things, a building's electrical, mechanical, and plumbing systems. Because components of these systems age and deteriorate at different rates, the City can estimate future maintenance needs by comparing the condition of components and systems with their expected useful lives. These estimates allow the City to determine how to best maintain buildings and help it to project future maintenance costs, which inform the City's maintenance budget.

In *McAlister*, the Kansas Supreme Court found a proposed ordinance that barred construction of a city hall from 90% of the area within a city implicated special knowledge and training in municipal governance. 289 Kan. at 407-09. The court noted decisions regarding where to construct municipal facilities necessarily require specialized knowledge and training. 289 Kan. at 408. And this was particularly true where the proposed ordinance effectively dictated where the City Hall could be built.

Similarly, in *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 541, 874 P.2d 667 (1994), the Supreme Court determined an attempt to repeal an ordinance establishing a city-wide stormwater management system required specialized knowledge, particularly regarding the system's physical structure, maintenance, and collection of fees. Because the city owned and operated the system, the system also implicated the city's expertise in fiscal management.

17

The City argues that a similar conclusion is warranted here because the decision whether to maintain, renovate, demolish, or otherwise dispose of city property requires specialized knowledge about the buildings and the City's budget. The City asserts that, as in *McAlister*, the proposed ordinance would limit the City's ability to operate. Save Century II counters the ordinance is legislative because it involves a value judgment—whether a building's historical importance or architectural significance outweighs the City's judgment regarding the building's condition and utility—that can be made by average citizens. But the organizers' argument fails to appreciate the specialized knowledge that this judgment requires.

The proposed ordinance would trigger an election whenever the City decided that certain city-owned buildings should be demolished, replaced, or adversely affected. As in *Kansas Taxpayers Network*, that decision requires expertise in fiscal management, as well as an understanding of the buildings' existing system needs. The ordinance would invade and permeate the City's administrative assessments of these structures. And the ordinance would prevent the City from acting on its particular knowledge of these buildings, or creating financial plans to cover the buildings' future upkeep, without an election. These traits all demonstrate the ordinance's administrative nature.

Our analysis of the fourth *McAlister* consideration—whether the ordinance implicates a statewide policy administered by city officials—further strengthens this conclusion. Save Century II asserts the proposed ordinance only concerns local affairs and does not impose on statewide policy. The district court disagreed, ruling that the proposed ordinance would conflict with the City's constitutional authority to conduct elections. We find that this analysis misconstrued how this fourth point should be analyzed and applied. But we agree with the City that this consideration again tends to demonstrate that the ordinance is administrative.

18

This fourth consideration was first discussed at length by the Kansas Supreme Court in *Rauh v. City of Hutchinson*, 223 Kan. 514, 575 P.2d 517 (1978). The plaintiff in *Rauh* was circulating initiative petitions to challenge the city's issuance of industrial revenue bonds to finance the improvement and expansion of a Cargill plant and sought a declaratory judgment that the bond ordinances were legislative (and thus within the purview of the initiative statute). The Kansas Supreme Court found that the bond ordinances were administrative and thus could not be altered through the initiative process. 223 Kan. at 522.

To reach this conclusion, the *Rauh* court observed that when the subject of an ordinance is a matter of statewide concern or policy—like the issuance of revenue bonds—courts may be able to glean whether the policy is legislative or administrative from the Kansas Legislature's delegation of authority. 223 Kan. at 519-20. When the legislature has delegated decision-making power to a "'local council or board as the state's designated agent for local implementation of state policy,'" it tends to show that the actions are administrative. 223 Kan. at 519-20. Because the industrial-revenue-bond statutes delegated the authority to city governments to adopt procedures as to how the bonds should be implemented, the cities were merely administering the existing statutory policy (not adopting new policies of their own). See 223 Kan. at 520-21.

The City's constitutional authority to conduct elections—on which the district court based its ruling—does not involve these same questions. Whether the City had the constitutional authority to engage in the actions demanded by proposed ordinance, if adopted, presents a different issue from whether the ordinance intruded on the City's administration of a statewide policy.

But the district court's mistaken analysis does not render the fourth *McAlister* consideration inapplicable. As the City argued before the district court and continues to argue on appeal, the Historic Preservation Act and various statutes, such as K.S.A. 12-

19

1739—authorizing a city to sell city-owned buildings—suggest that historical preservation is an issue of statewide concern and that the legislature has delegated the administration of this statewide policy to local governments. K.S.A. 75-2724(e)(1); Wichita Municipal Code of Ordinances (W.M.O.) §§ 2.12.1015-1025 (2022).

The Historic Preservation Act enables a "comprehensive program of historic preservation," noting that preservation "should be among the highest priorities of government." K.S.A. 75-2715. The Act permits delegation of local projects to cities that have enacted their own "comprehensive local historic preservation ordinance," as Wichita has adopted in W.M.O. §§ 2.12.1015-1025. K.S.A. 75-2724(e)(1). In other words, the legislature has entrusted city governments—not individual citizens—with the administration of Kansas' historic-preservation policies. This consideration, while not conclusive, again suggests that the proposed ordinance is administrative, not legislative, in nature.

After analyzing each of these considerations, we conclude that Save Century II's initiative petition proposed an ordinance that was predominantly administrative. While the proposed ordinance's policy and reach could be interpreted as either legislative or administrative, the specialized experience and financial acumen necessary to determine how and whether a historic building should be maintained reveal the ordinance's administrative nature. Indeed, these specialized considerations might have contributed to the Kansas Legislature's decision to delegate and entrust the administration of the Historic Preservation Act to the city government.

Because the ordinance proposed by Save Century II's petition is predominantly administrative, it cannot be adopted through the initiative process. K.S.A. 12-3013(e)(1). The district court correctly found that the City is not required to take any further action on the proposed ordinance under K.S.A. 12-3013.

2.2.   *We decline to reach the district court's alternative constitutional analyses as to whether the proposed ordinance would be enforceable if adopted.*

The district court provided two alternative bases for its conclusion that the City was not required to submit Save Century II's proposed ordinance to the electorate: The court found that the future elections contemplated by ordinance exceeded the City's authority to call elections, as defined by the Kansas Constitution and Kansas statutes. But see Kan. Const. art. 12, § 5 (defining a city's home-rule powers). And the court concluded that several undefined terms in the ordinance violated the constitutional guarantee of due process because they did not inform the City what buildings and actions were subject to the ordinance. But see *Banks v. Spirit Aerosystems Inc.*, Case No. 120,335, 2020 WL 741567, at *3 (Kan. App.) (unpublished opinion) (unclear policy language that does not impose criminal liability or other penalties should not give rise to "a judicial finding of unconstitutional vagueness," but rather requires "an interpretation of the statutory language consistent with the discernible legislative intent and, if necessary, recognized canons of construction"), *rev. denied* 312 Kan 890 (2020).

The Kansas Supreme Court has repeatedly emphasized that appellate courts should refrain from deciding constitutional questions if a case can be resolved in some other fashion. See, e.g., *Butler v. Shawnee Mission School District Board of Education*, 314 Kan. 553, 554, 502 P.3d 89 (2022); *State ex rel. Schmidt*, 303 Kan. at 658. Based on this principle, we decline to further consider the district court's constitutional analyses.

In closing, we—like the district court—are mindful of the effect of our decision. Thousands of Wichita residents supported Save Century II's efforts to preserve Wichita's performing arts center and former public library. Those efforts had an impact—in response to these signatures, the City has adopted a policy that it will not tear down the Century II performing arts center or the former public library without first holding an advisory election to allow the residents' voices to be heard.

But the extent of this support does not mean that Save Century II's proposed ordinance is appropriate for an initiative petition. Kansas law has long recognized that residents may not use the initiative process to advance ordinances that are predominantly administrative in nature, and the ordinance proposed here falls into this category. The district court correctly applied this principle and ruled in favor of the City. We affirm the court's judgment.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  I concur in the result affirming the Sedgwick County District Court's judgment for the City of Wichita.